**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LAWRENCE J. SPINO,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br>a Delaware Corporation,<br><br>Defendants. | Case No.: 1:25-cv-11338 |

# MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Defendant Lyft, Inc. ("Lyft"), by and through its undersigned counsel, states as follows in support of its Motion to Compel Arbitration and Stay Proceedings ("Motion") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.

## I. INTRODUCTION

Plaintiff Lawrence Spino ("Plaintiff") is required as a matter of law to arbitrate his claims against Lyft arising out of a purported carjacking that occurred while Plaintiff was using the Lyft platform because Plaintiff and Lyft agreed to arbitrate all disputes between them. Both the FAA and Illinois law reflect a strong policy in favor of arbitration and courts consistently apply a presumption in favor of arbitrability where a contract—like Lyft's Terms of Service—contains an arbitration clause. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005) (holding that the FAA reflects a "liberal federal policy favoring arbitration agreements" and that any doubts respecting arbitrability "should be resolved in favor of arbitration") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) (holding that "even if the Illinois Uniform Arbitration Act were to control, the analysis and the result would be no different than under the FAA. The language of the FAA and the Illinois Uniform Arbitration Act is essentially the same") (citation omitted).

As now-Supreme Court Justice Ketanji Brown Jackson recently observed, consistent with a litany of cases nationwide, it is also "well established that Lyft's method of obtaining [] assent to its Terms of Service [by] presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service" is binding and sufficient to enforce Lyft's contractual arbitration clause. *Osvatics v. Lyft, Inc*., 535 F. Supp. 3d 1, 11 (D.D.C. 2021) (Jackson, J.) (citations omitted); *see also Kingsbury v. Lyft, Inc.*, No. 17 C 2272, 2018 WL 905509, at *2 (N.D. Ill., Feb. 15, 2018) (granting Lyft's motion to compel arbitration where "on multiple occasions Plaintiffs agreed to broad arbitration clauses" in Lyft's Terms of Service). Here, Plaintiff affirmatively accepted Lyft's Terms of Service—including its prominent mutual arbitration clause—before the incident alleged in the Complaint. The claims he now purports to bring against Lyft arising out of his use of the Lyft platform fall squarely within the scope of that agreement. As a result, there is "no place for the exercise of discretion" by the Court, as Plaintiff is contractually bound to arbitrate his claims. *Dileo ex rel. Dileo v. Vi-Jon Lab'ys, Inc.,* No. 05 C 2877, 2007 WL 1118444, at *2 (N.D. Ill. Apr. 12, 2007) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). This Court should therefore enforce the parties' agreement by compelling Plaintiff to arbitrate his claims against Lyft and staying these proceedings as to Lyft pending the outcome of the arbitration.

## II. FACTUAL BACKGROUND

This case stems from a purported June 23, 2024 carjacking that led to the shooting and paralysis of Plaintiff (the "Incident"). Plaintiff allegedly used the Lyft application, website, and technology platform (the "Lyft platform") to arrange a ride with a "supposed customer," but was purportedly met by four unknown assailants who, at some point after entering Plaintiff's car, attacked and shot Plaintiff. (*See* Complaint pp. 2, 8-9, ¶¶ 39-45.) Plaintiff has now raised claims for Strict Product Liability, Negligent Failure to Warn, Negligent Training, and General Negligence, all of which are premised on Lyft's purported failure to prevent or mitigate the attack. (*See id*., pp. 10-18, ¶ 56-80.)[1]

---

1 Lyft filed its notice of removal on September 18, 2025. (Dkt. #1.) Lyft contests the merits of the

### A. <u>The Lyft Platform</u>

Lyft is a transportation network company, defined by Illinois statute "as an entity operating in this State that uses a digital network or software application service to connect passengers to transportation network company services provided by transportation network company drivers." 625 ILCS 57/5. In other words, Lyft operates a peer-to-peer software platform that connects users seeking rides to certain destinations ("riders") with independent drivers ("drivers") who provide rides using personal vehicles. (Exhibit 1, Declaration of Alex Sniegowski, at ¶¶ 4-6.)

A user—like Plaintiff—cannot access the Lyft platform to offer rides to other users of the Lyft platform without first creating a Lyft user account via the Lyft App. (*Id*. at ¶ 7.) This process requires the user to input information such as their first and last name, email address, and phone number. (*Id*.) The user is also required during the account creation process to accept Lyft's then-current Terms of Service, which include (and have at all relevant times included) a conspicuous mutual arbitration clause requiring Lyft and the user to submit all disputes between them—including those arising out of or related to the Lyft platform—to binding arbitration. (*See id.* at ¶¶ 8, 12, 17, Exhibit 2, Lyft Terms of Service, at ¶ 17.)

A person cannot complete the account creation process or offer rideshare services through the Lyft App unless they affirmatively accept and agree to be bound by Lyft's Terms of Service. (Ex. 1 at ¶¶ 8, 19.) Lyft's current Terms of Service are always available on its public website, and after a user creates a Lyft account, they may also access a full copy of Lyft's Terms of Service at any time through their own Lyft App. (*Id.* at ¶ 9.)

### B. <u>Plaintiff's Repeated Consent to Lyft's Terms of Service</u>

Plaintiff affirmatively accepted Lyft's Terms of Service through the Lyft App on November 5, 2023, before the Incident in June 2024. In turn, Plaintiff was able to benefit from his acceptance of Lyft's Terms of Service by using the Lyft App to offer 878 rides—including

---

claim against it, but resolution of that claim is for the arbitrator, not this Court.

purportedly the ride at issue in this suit (*see Id.* at ¶ 4). Plaintiff's consent history on the Lyft platform is as follows:

- Plaintiff first created a user account through the Lyft App and accepted Lyft's Terms of Service on November 5, 2023. (*See id* at ¶¶ 11-13.) The Terms of Service that he accepted at that time were those dated December 12, 2022. (*See generally* Ex. 2, December 12, 2022 Terms of Service.)
- The Accident occurred on June 23, 2024. (Compl. p. 2, ¶ 4.) Thus, the December 12, 2022, Terms of Service were in effect as to Plaintiff at the time of the Incident.

At the time Plaintiff affirmatively accepted the December 12, 2022 Terms of Service, Plaintiff was presented with the full text of those Terms of Service—including the prominent arbitration provision—directly on the screen in his Lyft App. (*See* Ex. 1, at ¶¶ 16-17.) The Lyft App directed him to scroll through and read the entire Lyft Terms of Service at this time. (*Id.*) At the bottom of the screen, immediately under the text of the Lyft Terms of Service, the Lyft App presented him with a button that he was required to click to demonstrate his consent and agreement to the Lyft Terms of Service and to proceed with use of the Lyft App. (*Id.*) Plaintiff could not have used the Lyft App to offer his 878 rides on the Lyft platform, including the ride giving rise to his claims in this lawsuit, without having affirmatively accepted the Terms of Service by clicking the consent button immediately under the text of the Terms of Service. (*Id.*)

**C. <u>Plaintiff and Lyft's Agreement to Arbitrate Disputes</u>**

The arbitration provision provides that Lyft and Plaintiff would both submit all disputes between them to binding arbitration. (*See* Ex. 2 at ¶ 17.) The introduction on the very first page of the Terms of Service alerted Plaintiff to the arbitration agreement, conspicuously and unambiguously stating, apart from other text:

> PLEASE BE ADVISED: THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS YOU AND LYFT HAVE AGAINST EACH OTHER CAN BE BROUGHT (SEE SECTION 17 BELOW). THESE PROVISIONS WILL, WITH LIMITED EXCEPTION, REQUIRE YOU TO SUBMIT

> CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION . . .
>
> By entering into this Agreement, and/or by using or accessing the Lyft Platform you expressly acknowledge that you understand this Agreement (including the dispute resolution and arbitration provisions in Section 17) and accept all of its terms. IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MAY NOT USE OR ACCESS THE LYFT PLATFORM OR ANY OF THE SERVICES PROVIDED THROUGH THE LYFT PLATFORM.

(Ex. 2 at p.1.) The "SEE SECTION 17 BELOW" is a blue hyperlink that takes the reader directly to the full arbitration provision within the Terms of Service.

The arbitration provision itself, under the bolded heading "**DISPUTE RESOLUTION AND ARBITRATION AGREEMENT,"** emphasized in capital letters: "YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION, as set forth below." (*See* Ex. 2 at ¶17(a).)

The scope of the parties' arbitration agreement expressly covered "any dispute, claim or controversy whether based on past, present, or future events, arising out of or relating to…the Lyft Platform", "the driving services provided by Drivers to Riders" (hereinafter the "Rideshare Services") and "all other federal and state statutory and common law claims." (*Id.*) Moreover, the agreement included (1) a delegation clause making clear any dispute "concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator" (except in a narrow set of circumstances that do not apply here); and (2) a choice-of-law provision, providing that the arbitration agreement "is governed by the Federal Arbitration Act and survives after the Agreement terminates or your relationship with Lyft ends." (*Id*. at ¶ 17(a).)

Plaintiff indisputably accepted the Lyft Terms of Service, and could not have benefited from his use of the Lyft platform—on 878 different occasions—without having agreed to be bound by these terms.

## III. LEGAL ARGUMENT

Plaintiff asserts a claim against Lyft that arises out of his use of the Lyft platform on June 23, 2024, yet he seeks to avoid enforcement of the very Terms of Service that enabled him to benefit from his use of the Lyft platform on that date (and on 878 other occasions) by suing Lyft in this Court. Because he unambiguously agreed to arbitrate any dispute against Lyft, including those "arising out of or relating to" his use of the Lyft platform as in this case, Plaintiff is contractually required under the Terms of Service and the FAA to pursue that claim in arbitration. (*See* Compl. pp. 2, 8-9, ¶¶ 39-45; *see also* Ex. 1, Sniegowski Decl. ¶ 12; Exhibit 3, TOS Consent History.)

### A. The FAA Strongly Favors Enforcement of Arbitration Agreements

The FAA—which governs the parties' arbitration agreement[2]—reflects "a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating* (1984) 465 U.S. 1, 10; *cf. Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003) (the FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements"). Under the FAA, the standard for arbitrability is not high and "leaves no place for the exercise of discretion …, but instead mandates that … courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213, 218 (emphasis in original); *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (courts are required to "rigorously to enforce arbitration agreements according to their terms"). Put differently, courts must comply with

---

[2] *See* Ex. 2 at ¶ 17(a) ("This agreement to arbitrate . . . is governed by the Federal Arbitration Act . . . ."); *e.g. O'Shea v. Maplebear Inc.*, 508 F. Supp. 3d 279, 285 (N.D. Ill. 2020) (applying the FAA because the parties agreed that their contract shall be governed by the FAA). Even in the absence of an express choice-of-law provision, the FAA would govern here because the arbitration agreement here is a "written provision in a contract evidencing a transaction involving commerce." *See* 9 U.S.C. § 2; *see also Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 ("Because the statute provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause,' it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" (citation omitted)).

Congress's explicit "federal policy favoring arbitration," *Wallace*, 970 F.3d at 800, and as a matter of law must enforce a valid arbitration agreement "in the manner provided for in [the parties'] agreement." 9 U.S.C. §§ 2, 4.

Consistent with the strong policy favoring arbitration embodied in Section 2 of the FAA, an arbitration agreement may be invalidated only under narrow contract principles applicable to the "revocation of any contract." *Shearson/Am. Express, Inc. v. McMahon* (1987) 482 U.S. 220, 226; *see also AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 ("[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."); *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (same). As the party resisting arbitration, Plaintiff "bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration" *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015); *accord Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014) ("The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration."). Although the FAA expressly applies to the agreement in this case, the Illinois Uniform Arbitration Act similarly provides that courts must order the parties to arbitrate if it finds that an agreement to arbitrate exists. *See, e.g.*, *Gillispie v. Vill. of Franklin Park*, 405 F. Supp. 2d 904, 909 (N.D. Ill. 2005) ("language of the FAA and the Illinois Uniform Arbitration Act is essentially the same") (collecting Illinois decisions). Put simply, regardless of which statute applies, "the result would be the same." *Id.*

### B. <u>The Court Must Compel Arbitration of Plaintiff's Claim Against Lyft</u>

Under the FAA, a court may decide only two narrow "gateway" issues in determining whether to compel arbitration: (1) "whether the parties are bound by a given arbitration clause"; and (2) whether that clause "applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84; *Emps. Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573, 576 (7th Cir. 2006). Stated otherwise, guided by the strong policy favoring arbitration, courts

merely assess whether an "arbitration agreement exists, and if it does, enforce it in accordance with its terms." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24-25. Here, both gateway issues are easily satisfied: ***First***, Plaintiff agreed to Lyft's Terms of Service, including its conspicuous arbitration agreement. ***Second***, the scope of the agreement on its face applies to Plaintiff's claim premised on his use of the Lyft platform—but even if that issue were disputed, the agreement contains a clear and unmistakable delegation clause that reserves for the arbitrator (not this Court) any debate over the scope or enforceability of the arbitration clause.

*1.* ***Plaintiff Is Bound by the Arbitration Agreement***

As explained above in Section II.B, Plaintiff affirmatively agreed to Lyft's Terms of Service by explicitly acknowledging his consent within the Lyft App. (Ex. 1, Sniegowski Decl. ¶¶ 11-18; Ex. 3, TOS Consent History; Exhibit 4, Plaintiff's Lyft User Profile.) The Terms of Service to which Plaintiff consented contained a mutual, conspicuous, and unambiguous arbitration clause confirming that Lyft and Plaintiff "AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION." (Ex. 2 at ¶ 17(a).) Furthermore, the introductory first page of the Terms of Service advised Plaintiff in bold capital letters: "**IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MAY NOT USE OR ACCESS THE LYFT PLATFORM**." (Ex. 2 at p. 1.) The Terms of Service remained publicly available to Plaintiff on Lyft's website and through the Lyft App on Plaintiff's own mobile device. (Ex. 1, Sniegowski Decl. at ¶ 9.)

Courts nationwide have consistently enforced Lyft's arbitration agreement on virtually identical facts. In *Osvatics v. Lyft, Inc.*, for example, now-Justice Jackson evaluated Lyft's Terms of Service in a putative class-action lawsuit, finding it "well established that Lyft's method of obtaining [] assent to its Terms of Service—presenting the terms of the agreement and requiring users to click 'I Agree' before they can access the service [] constitutes a valid means of offer and

acceptance." 535 F. Supp. 3d at 11 (citations omitted). Justice Jackson thus held that Lyft's Terms of Service "formed a valid arbitration agreement, and that agreement is enforceable under the FAA." *Id*. at 22-23; *see also, e.g.*, *Kingsbury v. Lyft, Inc.*, No. 17 C 2272, 2018 WL 905509, at *2 (N.D. Ill., Feb. 15, 2018) (granting Lyft's motion to compel arbitration where "on multiple occasions Plaintiffs agreed to broad arbitration clauses" in Lyft's Terms of Service); *Gambo v. Lyft, Inc.*, No. CV 22-1726, 2022 WL 16961132, at *5 (D.D.C. Nov. 16, 2022) (granting Lyft's motion to compel arbitration in a personal injury case and finding that "[a]ny reasonable smartphone user would understand that by clicking on" Lyft's consent button, "he was agreeing to [Lyft's Terms of Service]" and the arbitration provision therein); *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 966 (N.D. Cal 2015) (applying California law) (granting motion to compel arbitration and referring disputes over scope and enforceability to the arbitrator, consistent with delegation clause); *Austin v. Lyft, Inc.*, No. 21-CV-9345, 2022 WL 4095386 (N.D. Cal. Sept. 2, 2022) ("Here, the Court finds Austin agreed to arbitrate each of his claims asserted against Lyft. In particular, contrary to Austin's argument, Lyft has established that … the parties executed an arbitration agreement contained in … Lyft's Terms of Service."); *Peterson*, 2018 WL 6047085, at *2-6 (similar); *Bekele v. Lyft, Inc.*, 918 F.3d 181, 184 (1st Cir. 2019) (enforcing Lyft's Terms of Service presented online where user could scroll to review all terms before clicking "I accept"); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439–440 (S.D.N.Y. 2019) ("[B]y clicking 'I ACCEPT' upon being presented with the updated Terms of Service, [Plaintiff] accepted the terms of the updated contact and entered into an agreement with Lyft and its subsidiaries."); *Person v. Lyft, Inc.*, No. 1:19-CV-2914-TWT, 2020 WL 5639804, at *1 (N.D. Ga., Sept. 9, 2020) (holding Lyft's "arbitration agreement is valid and enforceable and precludes [Plaintiff] from bringing claims in court.").[3]

[3] Indeed, one State Supreme Court has endorsed Lyft's method of obtaining user consent to its Terms of Service as a ***model*** for the "clearest manifestation of assent" to online Terms of Service. *See Kauders v. Uber Tech., Inc.*, 486 Mass. 557, 574 (Mass. 2021) (citing *Wickberg v. Lyft, Inc.*, 356 F. Supp. 3d 179, 181 (D. Mass. 2018)).

The Court should reach the same conclusion here. As in *Osvatics*, *Kingsbury, Loewen*, *Austin*, *Bekele*, and a litany of other cases, Plaintiff agreed to and is bound by Lyft's Terms of Service, including its conspicuous arbitration agreement.

### *2. The Arbitration Agreement Covers Plaintiff's Claims, and Regardless, Any Dispute as to Arbitrability Must Be Resolved By The Arbitrator*

Because Plaintiff agreed to Lyft's Terms of Service, the only other issue for this Court is whether the arbitration agreement in the Terms of Service applies to his claim against Lyft. There can be no genuine dispute that it does, as his claim arises out of his use of the Lyft platform and thus fall squarely within the scope of the arbitration clause. But regardless, given the delegation clause, any disagreement by Plaintiff over scope or arbitrability must be resolved by the arbitrator, not this Court.

First, as a threshold matter, the Terms of Service require Lyft and Plaintiff to submit "ALL DISPUTES AND CLAIMS BETWEEN" them to arbitration, including those "arising out of or relating to … the Lyft Platform, the Rideshare Services, … any other goods or services made available through the Lyft Platform" and "all other federal and state statutory and common law claims." (*See* Ex. 2 at ¶17(a).) Indeed, the arbitration agreement expressly states that it is "intended to require the arbitration of ***every claim or dispute that can lawfully be arbitrated***" except for certain claims expressly excluded (none of which apply here).[4] (*Id.* (emphasis added)); *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019) (the parties' agreement to arbitrate "[a]ny dispute or controversy ... arising out of or related to this Agreement" was sufficiently broad to encompass the plaintiff's claims). Here, it is undisputed that Plaintiff's claim arises from an incident that occurred while he was using the Lyft platform to connect with a prospective user for the purpose of providing that user with a ride. (*See*

[4] These exceptions are for (1) small claims actions brought on an individual basis, (2) representative actions "brought on behalf of others under PAGA or other private attorneys general acts," (3) claims for "workers' compensation, state disability insurance and unemployment insurance benefits," and (4) claims that are not subject to arbitration pursuant to "generally applicable law not preempted by the FAA." (Ex. 2 at ¶17(g).)

Compl. pp. 2, 8-9, ¶¶ 39-45.) Thus, Plaintiff cannot credibly contend that his claim against Lyft arises out of anything other than his use of the "Lyft Platform" to offer "rideshare services," and accordingly, those claims must "be exclusively resolved by binding arbitration." (*See* Ex. 2 at ¶ 17.)

Second, even if Plaintiff could dispute the scope of the arbitration agreement (he cannot), any such dispute must be resolved by the arbitrator and not this Court. The issue of whether the arbitration agreement applies to Plaintiff's claim has been explicitly and exclusively delegated to the arbitrator: Section 17(a) of the Terms of Service states in no uncertain terms that "[a]ll disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator" (except in very limited circumstances that do not apply here). (Ex. 2, ¶17(a).)

An "agreement to arbitrate a gateway issue" through a delegation clause like the one in Lyft's Terms of Service "is simply an additional, antecedent agreement," and "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson* (2010) 561 U.S. 63, 70. Indeed, courts agree that parties may delegate the issue of arbitrability and "courts must respect the parties' decision as embodied in the contract"—particularly where (as here) the delegation clause is clear and unmistakable. *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) 139 S. Ct. 524, 528; *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator"); *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 809 n.3 (N.D. Ill. 2020) (holding that it is "well-settled" that parties may delegate whether an issue is subject to arbitration); *Nandorf, Inc.*, 410 F. Supp. 3d at 888 (enforcing delegation provision); *see also Hudgins v. Total Quality Logistics, LLC*, No. 16 C 7331, 2016 WL 7426135, at *7 (N.D. Ill. Dec. 23, 2016) (citing *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016) (enforcing delegation provision in a rideshare agreement)).

In short, Plaintiff agreed to Lyft's Terms of Service and its conspicuous arbitration clause requiring not only that he submit his claim against Lyft to arbitration, but also that any dispute

over arbitrability be resolved in arbitration. Accordingly, consistent with the strong federal policy favoring arbitration, this Court should—indeed, must as a matter of law—enforce the parties' contractual agreement and compel Plaintiff to arbitrate his claim against Lyft.

### C. The Court Should Stay The Proceedings Against Lyft Pending Arbitration

An order compelling claims to arbitration results in a mandatory stay of those claims. *See* 9 U.S.C. § 3; *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007); of *Gorny v. Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *2 (N.D. Ill. June 7, 2019) ("The [FAA] provides for stays of proceedings in federal district courts when an issue in the proceeding is referrable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement.") (citation omitted); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 964 (N.D. Ill. 2020) (same). Because Plaintiff's claim against Lyft is subject to binding arbitration,[5] the Court should stay litigation of Plaintiff's claim against Lyft pending arbitration.

## IV. CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court grant this Motion, compel Plaintiff's claims against Lyft to binding arbitration pursuant to the Terms of Service, and stay the proceedings against Lyft pending the outcome of that arbitration.

---

[5] Counsel for Lyft reached out to counsel for Plaintiff, who has confirmed that Plaintiff intends to oppose Lyft's Motion to Compel Arbitration and Stay Proceedings.

Dated: September 25, 2025

Respectfully Submitted,

LYFT, INC.

By: ______________________
One of Its Attorneys

Eric Y. Choi
Gail E. Lee
Thomas N. Zahrt
NEAL, GERBER & EISENBERG LLP
225 W. Randolph St., Suite 2800
Chicago, Illinois 60606
Telephone: (312) 269-8000
Facsimile: (312) 980-0736
echoi@nge.com
glee@nge.com
tzahrt@nge.com

*Counsel for Defendant Lyft, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he electronically filed the foregoing ***Motion to Compel Arbitration and Stay Proceedings*** using the CM/ECF system, which will send notice of this electronic filing to all counsel of record receiving electronic notification on September 25, 2025.

*/s/ Eric Y. Choi*

Attorney for Lyft, Inc.