IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

LAWRENCE J. SPINO,

    PLAINTIFF,

V.                                  CASE NO.: 1:25-cv-11338

LYFT, INC., A DELWARE
CORPORATION,

    DEFENDANT.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

    Plaintiff, LAWRENCE J. SPINO, through his attorneys, ROMANUCCI & BLANDIN, LLC in Response to Defendant's Motion to Compel Arbitration and Stay Proceedings, states as follows:

**STATEMENT OF FACTS**

    On June 23, 2024, Lawrence J. Spino was working as a Lyft driver in and around Chicago, Illinois (ECF 1-1 at ¶39). Shortly after midnight, four assailants ordered a Lyft ride to be picked up in Evanston, Illinois and transported to Chicago (*Id.* at ¶41). The assailants created a Lyft account using a false name, fabricated email address, and unverified payment method (*Id.* at ¶41, 42, 43) Mr. Spino accepted the ride request and picked up four passengers (three male, one female) ( *Id.* at ¶48). The passengers directed Mr. Spino to 930 E 91st Street in Chicago, where they announced a robbery and pulled guns on him ( *Id.* at ¶48). One assailant shot Spino in the back of the neck, leaving him paralyzed (*Id.* at ¶10, 49, 50)

The Complaint alleges that Lyft knew or should have known its drivers were targets for violent crime, including carjackings (*Id.* at ¶46). Lyft knew or should have known multiple rideshare drivers had been assaulted using similar fraudulent schemes (*Id.* at ¶47).

Lyft does not require or provide safety measures in drivers' cars such as physical barriers, GPS tracking, or security cameras (*Id.* at ¶16). Lyft does not warn drivers of risks or train them to identify dangerous situations, neighborhoods, or passengers (*Id.* at ¶17). Prospective passengers are not subject to any background check or identity verification process (*Id.* at ¶19). To open a passenger account requires only a phone number, email address, and payment method (*Id.*). The entire account creation process can be completed in minutes with fabricated information (*Id.* at ¶20)

Lyft inspects drivers' vehicles initially and annually to ensure safety features for passengers (functioning tires, doors, horn, brakes, lights, seat belts, turn signals) (*Id.* at ¶15). Despite controlling vehicle safety features, Lyft does not require any safety measures to protect drivers (*Id.* at ¶16)

Lyft penalizes drivers for declining or canceling rides (*Id.* at ¶29). Drivers risk suspension or deactivation for declining too many rides (*Id.*). Drivers receive minimal information about passengers - only first name, trip length, and pickup location (*Id.* at ¶30). Drivers receive no photo or full name to verify passenger identity (*Id.*). Lyft offers bonuses for accepting certain numbers of rides, which may be necessary for profitability (*Id.* at ¶31-32)

Lyft has massive data collection and analysis capabilities that could identify fraudulent users (*Id.* at ¶22). Lyft has implemented identity verification in some markets like Minnesota, requiring ID for anonymous payment methods (*Id.* at ¶23). Lyft collects extensive rider data

including names, email, phone numbers, payment methods, location data, and device information (*Id.* at ¶26). Lyft has partnered with ADT security for emergency buttons but did not provide this to Spino (*Id.* at ¶25). The design and implementation of Lyft's platform is defective. The defective design was the proximate cause of Mr. Spino's injuries.

## LYFT'S MOTION

Lyft has filed the instant Motion on the argument that Plaintiff agreed to the arbitration provision as outlined in Lyft's Terms of Service, that the Plaintiff's claims are subject to that arbitration provision, and that the arbitration provision is enforceable under the law. As discussed more below, Plaintiff disputes Defendant's assertions on all points.

## ARGUMENT

The FAA embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT & T Mobility LLC v. Concepcion,* ––– U.S. ––––, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 2).

A court must determine whether the parties are bound by a given arbitration agreement and whether the agreement to arbitrate applies to a particular type of controversy. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). In determining whether parties have agreed to arbitrate, courts apply state contract law. *James v. McDonald's*

*Corp.,* 417 F.3d 672, 677 (7th Cir.2005) (citing *First Options of Chi. Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). If a valid agreement to arbitrate exists between the parties, the burden is on the party opposing arbitration to show that the claims at issue are not covered by the agreement. *See* \*736 *Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Upon being satisfied that the claims at issue are referable to arbitration under a valid agreement, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *Gore v. Alltel Commc'ns, LLC,* 666 F.3d 1027, 1032 (7th Cir.2012), and a request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). *Davis v. Fenton*, 26 F. Supp. 3d 727, 735–36 (N.D. Ill. 2014**)**

**I       PLAINTIFF'S CLAIMS ARE NOT COVERED BY LYFT'S ARBITRATION CLAUSE**

Plaintiff's Complaint against Lyft contains five counts against Lyft for Strict Product Liability, Negligent Design, Negligent Failure to Warn, Negligent Training, and Negligence. Lyft has filed a motion before this Court asking that an arbitration clause which it claims is valid should be enforced with the result that this case should be stayed, and arbitration proceedings should be compelled. As discussed further below, the Plaintiff's claims fall outside the scope of Lyft's arbitration clause and Lyft's Motion should be denied.

Lyft's Terms of Service, which includes the subject arbitration clause, is attached to their Motion. (ECF 9-2). The relevant portion of the clause enumerates the types of claims subject to arbitration and states specifically:

> Except as expressly provided below, ALL DISPUTES AND CLAIMS BETWEEN US (EACH A "CLAIM" AND COLLECTIVELY, "CLAIMS") SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT. These Claims include, but are not limited to, any dispute, claim or controversy, whether based on past, present, or future events, arising out of or relating to: this Agreement and prior versions thereof (including the breach, termination, enforcement, interpretation or validity thereof), the Lyft Platform, the Rideshare Services, the Lyft Services, Lyft promotions, gift card, referrals or loyalty programs, the Lyft Tablet, any other goods or services made available through the Lyft Platform by Lyft or a third-party provider, your relationship with Lyft, the threatened or actual suspension, deactivation or termination of your User Account or this Agreement, background checks performed by or on Lyft's behalf, payments made by you or any payments made or allegedly owed to you, any promotions or offers made by Lyft, any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, wrongful termination, discrimination, harassment, retaliation, fraud, defamation, emotional distress, breach of any express or implied contract or covenant, claims arising under federal or state consumer protection laws; claims arising under antitrust laws, claims arising under the Telephone Consumer Protection Act and Fair Credit Reporting Act; and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Older Workers Benefit Protection Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act of 1974 (except for individual claims for employee benefits under any benefit plan sponsored by Lyft and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), and state statutes, if any, addressing the same or similar subject matters, and all other federal and state statutory and common law claims. All disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator, except as expressly provided below.

To determine the scope of [an arbitration clause], the court must examine both the wording of the particular clause and the terms of the parties' contract." *J & K Cement Constr., Inc. v. Montalbano Builders, Inc.,* 119 Ill.App.3d 663, 75 Ill.Dec. 68, 456 N.E.2d 889, 895 (Ill.App.Ct.2d Dist.1983). With respect to examining the language of the arbitration clause, the Seventh Circuit

has repeatedly held that the language "arising out of" and "relating to" is extremely broad and creates a "presumption of arbitrability" that "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore,* 666 F.3d at 1033–34 (quoting *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 642 (7th Cir.1993)); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909–10 (7th Cir.1999) (describing an arbitration clause with the language "arising out of or relating to" as "extremely broad and capable of an expansive reach," creating a "presumption of arbitrability"). Here, the arbitration clause contains the term "regarding," which is just as broad of a term as "arising out of" and "relating to." *See Oxford English Dictionary* (3d ed.2007) (defining "regarding" as "[i]n reference or relation to; about, concerning"). Consequently, because the arbitration clause is broad in scope, Plaintiff bears the heavy burden of rebutting the presumptive arbitrability of her claims. *See Gore,* 666 F.3d at 1034. With this presumption of arbitrability in mind, the Court now analyzes each of Plaintiff's claims individually to determine whether they are subject to arbitration. *Davis v. Fenton*, 26 F. Supp. 3d 727, 740 (N.D. Ill. 2014).

      Plaintiffs claims arise in tort out of the criminal actions of users of Lyft's platform. Lyft drafted the scope and language of the subject arbitration provision, and thus any dispute as to the scope of the terms of the provision should be construed against inclusion. The subject provision provides a laundry list of claims subject to arbitration. The list is detailed both in scope and type of claim. Noticeably absent is any mention of claims under product liability, claims of negligence, or claims arising out of any criminal acts by third parties. Had Lyft intended for claims of the kind alleged by Plaintiff in his Complaint, Lyft itself was in the best position to ensure the scope of the arbitration clause clearly delineated such claims. It did not.

As the claims brought by Plaintiff in his Complaint are not addressed in the plain language of the arbitration provision, the Court can and should find the arbitration provision does not apply to the Plaintiff's Complaint and deny Defendant's Motion.

**II      LYFT'S ARBITRATION CLAUSE IS PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE AND SHOULD NOT BE ENFORCED**

Plaintiff argues that the arbitration clause is invalid and unenforceable because it is both procedurally and substantively unconscionable. Federal courts look to state contract law to determine whether a valid arbitration agreement between the parties exists. *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366–67 (7th Cir.1999) (quoting *Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir.1997)). Under Illinois law, "a contract is unconscionable when, viewed as a whole, 'it is improvident, oppressive, or totally one-sided.' " *We Care Hair Dev., Inc. v. Engen,* 180 F.3d 838, 843 (7th Cir.1999) (quoting *Streams Sports Club, Ltd. v. Richmond,* 99 Ill.2d 182, 75 Ill.Dec. 667, 457 N.E.2d 1226, 1232 (Ill.1983)). "A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC,* 223 Ill.2d 1, 306 Ill.Dec. 157, 857 N.E.2d 250, 263 (Ill.2006) (citing *Razor v. Hyundai Motor Am.,* 222 Ill.2d 75, 305 Ill.Dec. 15, 854 N.E.2d 607, 622 (Ill.2006)).

   **1.   The arbitration clause is procedurally unconscionable.**

Plaintiff argues that the arbitration clause is invalid and unenforceable because it is procedurally unconscionable. "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 42 Ill.Dec. 25, 408 N.E.2d 403, 410 (Ill.App.Ct.

1st Dist.1980) (internal citations omitted). Illinois courts have found that procedural unconscionability can refer "to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it." *Kinkel,* 306 Ill.Dec. 157, 857 N.E.2d at 264 (quoting *Razor,* 305 Ill.Dec. 15, 854 N.E.2d at 622). In determining whether a contract is procedurally unconscionable, the Court should consider "all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Id.* (quoting *Frank's Maint.,* 42 Ill.Dec. 25, 408 N.E.2d at 410). While "both the conspicuousness of the clause and the negotiations relating to it are important," they are "not conclusive factors in determining the issue of unconscionability." *Id.* (quoting *Frank's Maint.,* 42 Ill.Dec. 25, 408 N.E.2d at 410).

The arbitration clause contained within Lyft's terms of Service is clearly procedurally unconscionable. It is contained on page 23 of a 48-page, dense document full of legalese which is presented to Lyft's drivers without explanation or context within the app screen on a smartphone. It is presented as terms which must be checked as accepted to use the platform when no person could reasonably be expected to read the details and understand their meaning. Plaintiff clearly states in his declaration that he has no memory of being presented with the arbitration provision and certainly has no recollection of ever agreeing to it. Ex 1. At ¶6-9.

For sake of argument, even if the Plaintiff did assent to the provision, which he denies, the manner in which Lyft's Motion shows the manner in which the Terms of Service is allegedly presented to users underscores the procedural issues that should invalidate the clause. Being presented with such a dense legal document on a smartphone screen with a "take it or leave it" manner, and with important clauses buried dozens of pages into a document in small text is

predatory, and is clearly meant to trick the end user into agreeing to such arduous terms. There is no reasonable scenario under which it can be shown that the end user is fully aware of the terms and knowingly assents to them. This is a classic example of an agreement that is procedurally unconscionable, and the Defendant's Motion should be denied.

### 2. The arbitration clause is substantively unconscionable.

Plaintiff alleges that the arbitration clause is invalid and unenforceable because it is substantively unconscionable. "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen,* 242 Ill.2d 48, 350 Ill.Dec. 847, 949 N.E.2d 639, 647 (Ill.2011) (quoting *Kinkel,* 306 Ill.Dec. 157, 857 N.E.2d at 267) (internal quotation marks omitted).

Plaintiff contends that the arbitration clause is one-sided because it is unlikely that Defendants would need to initiate arbitration proceedings against Plaintiff. Plaintiff contends that it is unlikely that Defendants would have a dispute with Plaintiff over a contract provision and unlikely that Defendants would dispute with themselves over the outcome of the case, the two areas governed by the arbitration clause.

There is no doubt that all the benefits of the arbitration clause lie with Lyft. There is no benefit to the end user of the arbitration clause. It is solely there to protect the interests of the party with all the bargaining power, the large corporation, rather than the individual user.

### III    LYFT'S MOTION FAILS BECAUSE THERE IS NO EVIDENCE THAT A VALID CONTRACT WAS EVER ENTERED INTO

Lyft's motion assumes rather than offers to prove the existence of a valid agreement between it and Lawrence Spino. Its motion must be denied because of its failure on this crucial point. Succinctly put, Lyft has zero evidence that Lawrence Spino entered into any agreement.

It is axiomatic that "there is no arbitration without a valid contract to arbitrate." *Tortoriello v. Gerald Nissan of North Aurora, Inc.,* 379 Ill. App. 3d 214, 226 (2008). Hence, before a trial court can even reach the question of whether the arbitration clause in an agreement is unconscionable or whether the claims are within the scope of the arbitration clause, it first must find that there was a valid agreement between the parties. *Id.* Accordingly, Illinois law is clear. "In considering a motion to compel arbitration, there is an issue to be determined before reaching the arbitrability of a given claim or dispute, namely, whether the parties actually entered into an arbitration agreement. *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 719 (2003), as modified on denial of reh'g (Mar. 27, 2003). As our Supreme Court has recognized, although Illinois' Uniform Arbitration Act generally expresses approval of arbitration, an arbitration agreement's validity is subject to "such grounds as exist for the revocation of any contract." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 59, 949 N.E.2d 639, 647 (2011). In consequence, the issue of whether a contract to arbitrate exists must be determined by the court, not an arbitrator. *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 719 (2003), as modified on denial of reh'g (Mar. 27, 2003). This is equally true whether one looks to federal or state law. "Whether under federal rules or state law, there is no arbitration without a valid contract to arbitrate*." Aste v. Metropolitan Life Insurance Co.*, 312 Ill.App.3d 972, 975 (2000).

The law is therefore clear. The matter of the validity of the agreement cannot be consigned to the arbitrators—it must be decided by this court before any other issues, such as whether the purported agreement is unconscionable or against public policy. For this case, which means this

Court must be able to find the existence of a valid agreement as a matter of law, since any factual issue precludes the granting of this motion since a jury demand has been filed by Plaintiff. *Gelinas v. Barry Quadrangle Condominium Association*, 2017 IL App (1st) 160826, ¶ 14.

Whether a contract exists, its terms and the intent of the parties are questions of fact to be determined by the trier of fact. *In re Marriage of Gibson–Terry*, 325 Ill.App.3d 317, 322 (2001). In the case at bar, the trier of fact will be a jury. In order to form a contract, there must be an offer, a strictly conforming acceptance, and consideration. *Brody v. Finch University of Health Sciences/Chicago Medical School*, 298 Ill.App.3d 146, 154 (1998). In the case at bar, there is no evidence of acceptance. Lyft's affidavit of Alex Sniegowski, Safety Senior Specialist for Lyft, the only evidence it offers to sustain its heavy burden, makes conclusory allegations whether the terms of use had been accepted by Lawrence Spino. ECF 9-1, at ¶ 12-13. It was simply the matter of pushing a button, which could be done by anyone. The attached affidavit of Lawrence Spino states that he has no specific recollection of agreeing to any of Lyft's Terms of Service at any time while using the app and has no knowledge of ever agreeing to any agreement to arbitrate claims. See Ex 1 to this Response at ¶6-9.

There has been no discovery in the case at bar that has disclosed that Lyft can point out that proves the existence of a valid contract at all. At this stage, there is only circumstantial evidence. The weight to be given to circumstantial evidence, and what inferences, if any are to be drawn therefrom, is inherently for the trier of fact to determine on hearing all the evidence. Circumstantial evidence can be rejected by the jury where it is deemed unsatisfactory. *People v. Hall*, 194 Ill. 2d 305, 332 (2000). Circumstantial evidence creates only a permissive inference which might be accepted or rejected by the jury. *Moore v. Atchison, T. & S. F. Ry. Co.*, 28 Ill. App. 2d 340, 351 (1960). And while, unlikely as it seems, a jury might accept Lyft's spin of the facts, this Court

cannot because it "must draw all reasonable inferences from the record in favor of the nonmoving party." *Garlick v. Naperville Township*, 2017 IL App (2d) 170025, ¶ 44.

Further, Plaintiff would also point out that there was no consideration for the alleged agreement. In order for a contract to be valid, there has to be legal consideration "at the moment the alleged contract was made." *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 28. Here, the user gets no additional benefit or consideration for the change in terms. The user gets exactly the same thing as he or she had before the terms were changed to affect a forfeiture of the user's right to trial by a court. The lack of new consideration is clear from the face of the pleadings itself. Considering all the evidence before the Court, it may rightly find that, in addition to there being no acceptance by Spino, the alleged promisor, there was also no consideration to support any valid agreement. Accordingly, Lyft's motion should be denied.

## IV. LYFT'S ARGUMENT FAILS BECAUSE THE SO-CALLED ARBITRATION AGREEMENT IS AGAINST PUBLIC POLICY

Illinois recognizes that a contract can be unenforceable because it is against public policy." Although related, a finding that a contract provision is unenforceable because it is unconscionable is distinct from a finding that a contract provision is invalid because it violates public policy." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). In deciding whether an agreement violates public policy, a court must determine whether the agreement is so capable of producing harm that its enforcement would be contrary to the public interest. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 181 Ill.2d 214, 226 (1998)). It is Plaintiff's position that the "arbitration agreement," and similar adhesion contracts that are now springing up in all directions, are contrary to the public interest and the source of serious harm to the citizens of the state of Illinois.

Lyft's drivers do not have freedom with respect to hidden "agreement" in the modified terms of use. They can't reject it, even if they could find it. And the reasonable inference to be drawn from the record in this case is that the entire arrangement of Lyft's presentation is deliberately calculated to be sure that the user does not find it. The driver without warning is suddenly locked out of an app upon which he or she relies for providing employment. That's what Lyft wants—when a person installs its app, that it will rely on Lyft to provide transportation services and therefore drive on it in preference to other ride share services or even traditional taxis. The driver's reliance on Lyft is a direct source of profit to the company. But because of that reliance, Lyft is virtually in a fiduciary relationship with its drivers—and therefore owes them at the very least a duty of fair dealing. The adhesion contract hidden in their modified terms of use is not only unfair but also is deliberately planned to be so. While the standard may be high, in the case at bar it is manifest that adhesion contracts such as Lyft's here are "manifestly injurious to the public welfare." *Progressive Universal Ins. Co. of Illinois v. Liberty Mut. Fire Ins. Co*., 215 Ill. 2d 121, 129–30 (2005), as modified on denial of reh'g (June 9, 2005).

When, in 2003, our Appellate Court compared the term of the state and federal arbitration acts, that comparison disclosed that they were both in effect in the year 2000. *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 719 (2003). Ergo, the thinking and assumptions that underlie both those statutes was the product of the last century when computers were still a relative novelty and smartphones undreamed of. In casting a big vote in favor of arbitration, the legislatures necessarily assumed arm's length transactions with a fair opportunity to consider the terms, because, in the absence of duress, those were only kind of transaction that there were. The legislatures never considered electro-duress, where the user was put on the spot by a sudden withholding a crucial life tool until he or she had—what?—simply clicked a button.

Lyft's Terms of Service do not advance any public interest. Further, there is no legitimate need for it to have managed its Terms of Service in the way it did. It required that the user click a button to agree to the terms; it could have just as easily flagged its arbitration terms and required the user to click to acknowledge that those and been read and agreed to. But that is exactly what Lyft didn't want, because it was aware that there were still people who would not be willing to sacrifice their constitutional rights for the sake of access to a driving service. Lyft would rather trick their drivers who relied upon them than lose business.

There is doubtless a public policy in favor of arbitration. But there is also a public policy in favor of fairness, of decency, a public policy against fraud and imposition. There has to be a limit as to how much deceitfulness the policy in favor of arbitration will tolerate—and Lyft's conduct has passed that limit. Its modified terms of use violate public policy, and accordingly its motion should be denied.

## V.   LYFT HAS ROUTINELY HELD THE ARBITRATION PROVISION DOES NOT APPLY TO CLAIMS WHERE USERS WERE VICTIMS OF CRIMINAL ACTIVITY.

Lyft routinely waives or agrees that the arbitration provision contained within the Terms of Service is inapplicable to claims where users were victims of criminal activity.  More specifically, in cases where drivers or customers are victims of sexual assault while using the Lyft platform, Lyft waives the arbitration provision. In fact, beginning in 2018, Lyft specifically removed the requirement to arbitrate for claims of sexual harassment and sexual assault. In a statement to Corporate Counsel magazine, Lyft stated: "Today, 48 hours prior to an impending lawsuit against their company, Uber made the good decision to adjust their policies. We agree with the changes and have removed the confidentiality requirement for sexual assault victims, as well as ended

mandatory arbitration for those individuals so that they can choose which venue is best for them. This policy extends to passengers, drivers and Lyft employees."[1]

Workers at Uber, Lyft, Microsoft, Google, and Facebook have caused those corporations to abjure forced arbitration of claims of sexual harassment and assault. *See* Daisuke Wakabayashi & Jessica Silver-Greenberg, *Facebook to Drop Forced Arbitration in Sexual Harassment Cases*, N.Y. Times, November 9, 2018, at B1; Kate Conger & Daisuke Wakabayashi, *Google Bows to Demands to Overhaul Abuse Policy*, N.Y. Times, November 9, 2018, at B1; Daisuke Wakabayashi, *Yielding to Critics, Uber Eliminates Forced Arbitration in Sexual Misconduct Cases*, N.Y. Times, May 16, 2018, at B3. *Marchan v. John Miller Farms, Inc.,* 352 F. Supp. 3d 938, 948 (D.N.D. 2018).

If Lyft takes the position that its drivers who are the victims of sexual assault and/or harassment should not have to bear the limitations of the arbitration provision and confidentiality provision, then Mr. Spino, a driver who was the victim of carjacking and attempted murder should have the same rights to a trial by jury. Any public policy arguments that lead Lyft to remove the arbitration provision for sexual assault and harassment victims applies just as persuasively to Mr. Spino's claims. To hold the arbitration provision applicable to Mr. Spino's claims would be a gross perversion of justice when the Defendant has made clear that users of their platform who are victims of crimes due to the actions or inactions of Defendant should not be subject to the arbitration provision. Accordingly, the Court should deny Defendant's Motion.

---

[1] https://www.abajournal.com/news/article/uber_and_lyft_end_mandatory_arbitration_clauses_for_sexual_assault_claims

WHEREFORE, Plaintiff, LAWRENCE J. SPINO, respectfully requests this Honorable Court to Deny Defendant's Motion to Compel Arbitration and Stay Proceedings, and for any further relief this Honorable Court deems fair and just.

Respectfully Submitted,

/s/*Michael D. Cerasa*
Counsel for Plaintiff

**ROMANUCCI & BLANDIN, LLC**
Michael D. Cerasa, Esq.
321 N. Clark St., Suite 900
Chicago, IL 60654
t.: 312.253.8618
f.: 312.458.1004
e.: mcerasa@rblaw.net
Atty. No.: 6343734

## CERTIFICATE OF SERVICE

I, Michael Cerasa, hereby certify that on October 27, 2025, **Plaintiff's Response to Defendant's Motion to Compel Arbitration and Stay Proceedings** was filed using CM/ECF which will provide notice to all parties.

/s/*Michael D. Cerasa*
Counsel for Plaintiff