**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| LAWRENCE J. SPINO,<br><br>Plaintiff,<br><br>v.<br><br>LYFT, INC.,<br>a Delaware Corporation,<br><br>Defendants. | Case No.: 1:25-cv-11338 |

**LYFT'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Lyft, Inc. ("Lyft"), by and through its undersigned counsel, submits the following Reply in support of its Motion to Compel Arbitration and Stay Proceedings ("Lyft's Motion") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.

## I. INTRODUCTION

Plaintiff's Response takes an everything-but-the-kitchen-sink approach to avoid Plaintiff's contractual obligation to arbitrate his dispute with Lyft. But each of Plaintiff's arguments fails under both the facts and the law. First, Plaintiff provides no evidence contradicting his assent to Lyft's Terms of Service ("ToS"). His professed failure to recall or read them is insufficient—otherwise, "contracts would not be worth the paper on which they are written." *Holly Stores v. Judie*, 179 F.2d 730, 734 (7th Cir. 1950). Second, Plaintiff does not cite a single case casting doubt on the ToS consent process. For good reason. Lyft presented Plaintiff with the full ToS in scrollable form and required that he click "I Agree" to them before being able to access the Lyft platform. "Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (citations omitted).

Third, Plaintiff's remaining arguments regarding scope and enforceability are for the arbitrator. "If there is a contract, then an arbitration clause may delegate all other issues, including

defenses, to the arbitrator." *K.F.C. v. Snap Inc*., 29 F.4th 835, 837 (7th Cir. 2022) (*citing Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)). The arbitration provision here did just that by making clear that any dispute "concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator." (*See* ECF 9-2, ToS, § 17(a)). Plaintiff did not mention the delegation clause in his Response, let alone challenge it. As a result, the "court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 68 (2019).

In any event, Plaintiff's arbitrability arguments are incorrect. The ToS prominently alerted Plaintiff that his claims here would be subject to arbitration—including in bolded text displayed on his phone and on the first page of the ToS. In clear, conspicuous language, Lyft told Plaintiff that: (1) "Before you can proceed you must read and agree to Lyft's Terms of Service"; (2) "These Terms of Service constitute a legally binding agreement [] between you and Lyft"; and (3) "THESE PROVISIONS WILL [] REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION." (ECF 9-2, Lyft's Mot. to Compel Arbitration, Ex. 2 at p. 1.) Plaintiff proceeded to benefit from his agreement with Lyft by using the Lyft platform to provide rideshare services for over seven (7) months after assenting. Nothing about these circumstances is unconscionable.

Further, Lyft's ToS clearly outlined the types of claims that are subject to arbitration and Plaintiff's claims, which arise out of his use of the Lyft platform and allege defects with the platform itself (*see*, *e.g.*, *Complaint* pp. 57-60), are directly encompassed by the arbitration provision—as the Northern District of Illinois has repeatedly found in nearly identical cases. This Court should do the same and compel Plaintiff's claims against Lyft to binding arbitration pursuant to the ToS and stay the proceedings against Lyft pending the outcome of that arbitration.

## II. LEGAL ARGUMENT

As the Seventh Circuit has held, Plaintiff is required to identify an issue of fact concerning contract formation to avoid compelled arbitration. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196

(7th Cir. 1987)). Plaintiff is required to meet the equivalent of the summary judgment standard and "demonstrate that a genuine issue of material fact" exists. *Tinder*, 305 F.3d at 735 (citations omitted). Plaintiff has not done so here.

### A. A Contract Was Formed Between Lyft and Plaintiff Requiring Arbitration

Lyft's Motion begins and ends with Plaintiff's consent to the ToS. Indeed, the sole inquiry before the Court is whether Plaintiff and Lyft have an arbitration agreement. They do, and nothing Plaintiff says in his Response changes that fact. Instead, Plaintiff declares that "[A]t no time while driving for Lyft do I recall agreeing to Lyft's Terms of Service attached to [Lyft's Motion]" and that he has "never seen Lyft's Terms of Service in the format presented to the Court," *i.e.*, "written on paper."[1] But what Plaintiff "recall[s]" is irrelevant. Illinois courts evaluate mutual assent "based on the objective conduct of the parties; their subjective intentions are irrelevant." *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 881 (N.D. Ill. 2020) (*citing Nat'l Prod. Workers Union Ins. Tr. v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011)). Objective intent to manifest assent "in Illinois is revealed by outward expressions such as words and acts." *Wilson*, 448 F. Supp. 3d at 881 (citing *Sgouros*, 817 F.3d at 1034).

There is no dispute that Plaintiff manifested his objective assent to the ToS by clicking "I Agree" directly below a scrollable display of the full text of the ToS. In fact, Plaintiff could not have used the Lyft application (and therefore could not have provided Rideshare Services) if he had not agreed to Lyft's ToS. (ECF 9-1, ¶¶ 14, 19.) Likewise, Lyft's business records confirm the unique user ID associated with Plaintiff's Lyft Account and that Plaintiff's mobile phone accepted Lyft's ToS on November 5, 2023. (*Id.*, ¶12).

It may well be that Plaintiff did not read Lyft's ToS and therefore does not "recall" assenting to them. However, that is no matter under governing precedent. *See Hill*, 105 F.3d at 1148 ("A contract need not be read to be effective; people who accept take the risk that the unread

---

[1] Lyft has never asserted that Plaintiff was provided with a paper copy of the ToS.

terms may in retrospect prove unwelcome.") (Citing *Carr v. CIGNA Secs., Inc.,* 95 F.3d 544, 547 (7th Cir. 1996); *Chicago Pac. Corp. v. Canada Life Assurance Co.*, 850 F.2d 334 (7th Cir. 1988)); *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) ("People are free to sign legal documents without reading them, but the documents are binding whether read or not."); *Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2021 WL 3033586, at *6 (N.D. Ill. July 19, 2021) ("As in the pre-digital world, internet users 'are free to sign legal documents without reading them, but the documents are binding whether read or not.'") (Quoting *Novitsky*, 196 F.3d at 702); *Gorny v. Wayfair Inc.*, No. 18 C 8259, 2019 WL 2409595, at *5-6 (N.D. Ill. June 7, 2019) (where this Court held that "the Court need not find that the party seeking to avoid arbitration actually read or signed the contract" and that the plaintiff's "complaints that he did not actually read the terms are of no consequence") (citing *Hill*, 105 F.3d at 1148). Plaintiff does not even mention—let alone contest—the case law reinforcing this foundational principle of contract law.

Similarly, courts routinely reject the notion that a person must be forced to review terms for a contract to be binding, often treating the issue as inseparable from the principle that a person need not read an agreement for its terms to be enforceable. *ADP, LLC v. Lynch*, 2016 WL 3574328, at *5 (D.N.J. June 30, 2016) (collecting cases and rejecting that a person must be forced to read a clickwrap agreement for it to be enforceable); *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 984 (2005) (holding an electronic agreement was enforceable where the user was not forced to read the terms or even bring them up on their screen). *See also Brown v. Luxottica Retail N. Am. Inc.*, 2010 WL 3893820, at *4 (N.D. Ill. Sept. 29, 2010) ("[Illinois] law does not protect persons who choose not to read documents given to them."); *Montgomery v. Corinthian Colleges, Inc.*, 2011 WL 1118942, at *4 (N.D. Ill. Mar. 25, 2011) ("Defendants' employees had no obligation to explain the arbitration provisions to Plaintiffs, and even if Plaintiffs did not read the provisions, they still can be bound by them.") (Citations omitted).

As one court explained, "to hold otherwise would contravene the well settled principle that '[a]failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation.'" *ADP, LLC*, 2016 WL 3574328 (quoting *Paper Express, Ltd. v. Pfankuch*

*Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). And the Seventh Circuit has flatly rejected the principle that failing to pay attention to the contents of a contract when agreeing to it somehow invalidates it or that a party must be required to read the contract. *Novitsky*, 196 F.3d at 702 ("Any other approach would undermine the validity of the written word and encourage people either to close their eyes (hoping that they can reap the benefits without incurring the costs and risks of the venture) or to come up with hard-to-refute tales of not reading or understanding the documents they sign."). Indeed, the Northern District recently found that a party's act of clicking "I agree" in response to Lyft's ToS—which, like here, prominently announced the existence of an arbitration provision—objectively manifested her agreement to that arbitration requirement. *Pepper v. Kunal Tailor & Lyft, Inc.*, 2023 U.S. Dist. LEXIS 169777, at *4-8 (N.D. Ill. Sep. 25, 2023) (rejecting a plaintiff's argument that she had not read Lyft's ToS in advance of clicking "I agree" so could not be bound and finding that a binding agreement existed between Lyft and the plaintiff).

Plaintiff's attempt to avoid his contractual obligation to arbitrate his claims against Lyft by now claiming he has no recollection of (or simply did not read) the arbitration agreement that he indisputably accepted should be rejected.

### B. <u>Plaintiff's Remaining Arguments are for the Arbitrator under the Parties' Delegation Clause</u>.

With Plaintiff's consent to the ToS established, the Court's inquiry is at an end. The ToS contains a broad delegation clause requiring that any dispute "concerning the arbitrability of a Claim (including disputes about the **scope, applicability, enforceability, revocability or validity** of the Arbitration Agreement) shall be decided by the arbitrator []." (*See* ECF 9-2, §17(a)) (emphasis added). Plaintiff did not mention the delegation clause in his Response—let alone challenge it. As a result, the Court "may not decide an arbitrability question that the parties have delegated to an arbitrator." *Henry Schein*, 586 U.S. at 69. *See also Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("In cases where parties have agreed to only one contract, and that contract contains an arbitration clause with a delegation provision, then, absent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration."); *K.F.C. v. Snap*

*Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("If there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator."). This applies to Plaintiff's primary argument that his claims "are not covered by Lyft's Arbitration Clause." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111–12 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."); *Henry Schein*, 586 U.S. at 68 (holding delegation provisions allow an arbitrator to decide "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). And it similarly applies to Plaintiff's position that the ToS are "unconscionable." *Holmes v. Diza Tacos Streeterville, LLC*, 2023 WL 1777463, at *2 (N.D. Ill. Feb. 6, 2023) ("And because Holmes does not specifically challenge the delegation clause, the Court must treat it as valid and enforce it pursuant to § 2 of the FAA, leaving Holmes' unconscionability arguments for the arbitrator."). Simply, Plaintiff's non-consent arguments are all for the arbitrator under the ToS.

### C. <u>Plaintiff's Claims Relate to His Use of the Lyft Platform and Performance of Rideshare Services and are Covered by the Arbitration Provision</u>

Even if the delegation clause could be ignored (it can't), Plaintiff's arbitrability arguments all fail. Start with scope. Plaintiff is exactly right that (1) the Court should look to the wording of the arbitration clause contained in Lyft's ToS to determine what claims are subject to arbitration and (2) the terms "arising out of" and "relating to" contained in Lyft's ToS are extremely broad and create a "presumption of arbitrability." (ECF 14, Pl.'s Response to Lyft's Mot. to Compel Arbitration, pp. 5-6.) And yet somehow Plaintiff asserts that his claims of strict product liability, negligent (product) design, negligent failure to warn, negligent training, and general negligence are not covered by the plain language of Lyft's ToS and the arbitration provision contained therein. Not so.

As Plaintiff acknowledges in his Response, Lyft's ToS require Lyft and Plaintiff to submit "ALL DISPUTES AND CLAIMS BETWEEN" them to arbitration, including those "arising out of or relating to … the Lyft Platform, the Rideshare Services, … any other goods or services made available through the Lyft Platform" and "all other federal and state statutory and common law

claims." (*See* ECF 9-2 at ¶17(a).) The same provision expressly states that it is "intended to require the arbitration of **every claim or dispute that can lawfully be arbitrated.**" (*Id.* (emphasis added)).

Plaintiff attempts to frame his claims as arising "in tort out of the criminal actions of users of Lyft's platform." Yet, he has not filed suit against those criminal actors in this action. Nor does his Complaint allege that Lyft participated in any criminal activity. Rather, Plaintiff states that his injuries were caused by the "defective condition" of the Lyft application (Complaint, Count I, ¶ 57), the "breach of [] duty owed to Plaintiff … by [Lyft] developing and marketing the subject Lyft Application, in a defective and unreasonably dangerous condition" (*id.*, Count II, ¶¶ 63-64), the failure of Lyft to "warn Plaintiff and others of the risks posed by the defects in the subject Lyft application" (*id.*, Count III, ¶ 67), Lyft's failure to train Plaintiff to identify fraudulent accounts on the Lyft Platform or to "identify potentially violent situations" (*id.*, Count IV, ¶ 73), and by Lyft's failure to "exercise reasonable care to prevent its drivers, including Plaintiff, from being assaulted or killed, or otherwise subject to harm from passengers" (*id.*, Count V, ¶ 79). In short, each of Plaintiff's counts are specifically related to alleged issues with (1) the "Lyft Platform," (2) with Lyft's provision of "Lyft Services," or (3) with Lyft's failure to exercise reasonable care to protect Plaintiff while he provided "Rideshare Services" to users of the Lyft Platform. All three of those terms are defined by Lyft's ToS and fall within the scope of Lyft's arbitration provision.

Lyft's ToS defines the Lyft Platform to encompass "Lyft applications, websites, technology, facilities, and platform" (ECF 9-2, Lyft's ToS, p. 1.) Lyft Services are defined as "any service provided by Lyft pursuant to the Lyft Platform," (*Id.*, p. 2.) And Rideshare Services are defined as "the driving services provided by Drivers to Riders, and other transportation related services provided by Drivers in connection with the Lyft Platform." (*Id.* at p. 2). As Plaintiff acknowledges, the arbitration provision at issue specifically covers "any dispute, claim, or controversy … arising out of or relating to … the Lyft Platform, the Rideshare Services, [or] the Lyft Services[]." (*Id.* at pp 23-24.) Indeed, even if Plaintiff's claims squarely "arise from" or "relate to" these defined categories, the arbitration provision also extends to "all other federal and

state statutory and common law claims." Plaintiff cannot seriously define his lawsuit, which contains five common law tort claims—both involving negligence and strict products liability allegations regarding Lyft's application and its failure to protect Plaintiff while he performed Rideshare Services—as falling outside the presumptively broad scope of the arbitration provision.

### D. <u>Plaintiff Provides No Evidence Supporting Procedural or Substantive Unconscionability</u>

Plaintiff's claims of procedural and substantive unconscionability also fall flat. Plaintiff ignores the prominent notice of the arbitration provision contained within Lyft's ToS and on Plaintiff's phone and cites no case law supporting his assertion that Lyft's ToS are substantively unconscionable, despite bearing the burden of demonstrating the unconscionability of the ToS. ***First***, Plaintiff asserts that the arbitration provision is "clearly procedurally unconscionable" because it is "contained on page 23 of a 48-page, dense document full of legalese which is presented to Lyft's drivers without explanation or context within the app screen of a smartphone," and which is "clearly meant to trick the end user into agreeing to such arduous terms." (ECF 14, Plaintiff's Resp. to Lyft's Mot. to Compel, pp. 8-9.) These assertions ignore the law, reality, and the record. Under Illinois contract law, Lyft need only provide an electronic user reasonable notice of the terms he is agreeing to. *See Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 965 (N.D. Ill. 2020) (quoting *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016) ("Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement.")). As the Seventh Circuit has made clear, "[t]his is not hard to accomplish." *Sgouros*, 817 F.3d at 1036. A user receives reasonable notice where the terms and conditions are "adequately communicated." *Id.* While a user must receive notice, there is no conspicuousness requirement for an arbitration provision. *Hill v. Gateway 2000*, 105 F.3d 1147 1148 (7th Cir. 1997) ("the Federal Arbitration Act is inconsistent with any requirement that an arbitration clause be prominent").

Even so, Lyft's Motion (ECF 9), Lyft's ToS (ECF 9-2) and the Declaration of Alex Sniegowski (ECF 9-4) all demonstrate the prominence of notice concerning the arbitration

provision contained in Lyft's ToS. Not only is that provision referenced in capitalized and bolded text *on the very first page of the ToS* (ECF 9-2, p. 1), Plaintiff's smart phone also displayed for him (with no need to scroll and prior to his acceptance of the ToS) another bolded and capitalized notice of the existence of an arbitration provision. (ECF 9-1, Declaration of Alex Sniegowski, ¶ 17.) This text warned Plaintiff to "(**SEE SECTION 17 BELOW**)" and that "**THESE PROVISIONS WILL [] REQUIRE YOU TO [] SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION[]**." (*Id.*)

***Second***, Plaintiff states—without any support and without any examples—that the arbitration clause is one-sided and therefore substantively unconscionable because "it is unlikely that Defendants would need to initiate arbitration proceedings against Plaintiff" and that "there is no doubt that all the benefits of the arbitration clause lie with Lyft." This failure is fatal to Plaintiff's argument because he bears the burden of showing that Lyft's ToS were substantively (and procedurally) unconscionable. *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 986 (2005).

Yet, even if Plaintiff had provided examples or support, it is clear that he was not required to use the Lyft Platform. Nor was he required to offer Rideshare Services using that Platform. Those are both benefits that Plaintiff acquired through his assent to Lyft's ToS. Upon seeing the prominent notice that any of his future claims against Lyft might be subject to arbitration, Plaintiff could have simply ceased his use of the Lyft Platform and thereby eliminated any risk that a future lawsuit might be compelled to arbitration. *See*, *e.g.*, *Tamburo v. Hyundai Motor Am. Corp.*, 2024 U.S. Dist. LEXIS 262, at *11-12 (N.D. Ill. Jan. 2, 2024) (finding that Hyundai's terms of service governing the "Blue Link" smart connection within its vehicles were not substantively unconscionable because "owners [were] free to use [] Blue Link and connect services or forego its use" and the terms "[do] not oppress or surprise an innocent party, require more rights or obligations of the user (where Hyundai has bilaterally agreed to arbitration and is providing services in exchange)[].") Yet, Plaintiff kept using the Lyft Platform for over 7 months. Having presented no evidence of unconscionability, Plaintiff should not be allowed to escape the terms of the agreement that entitled him to benefit from use of the Lyft Platform.

### E. <u>There Is No Public Policy Rationale Against Enforcement of the Arbitration Provision</u>

Plaintiff next inserts a disjointed argument that purports to illustrate how Lyft's ToS and the arbitration provision contained therein is contrary to public policy. He argues that the arbitration provision—and its presentment via smartphone—is a concept unforeseen by Congress or the Illinois Legislature when constructing state and federal arbitration acts. (ECF 14, p. 13). Legislatures, Plaintiff argues, could not have foreseen an agreement wherein "the user was put on the spot," and risked losing the benefits of a "crucial life tool" (apparently the Lyft Platform) if they refused to "click[] a button." (*Id.*, p. 13.)

Plaintiff is essentially asking this Court to depart from well-settled case law involving consent to online agreements by invalidating nearly ***every*** contractual agreement accepted through an iPhone or other mobile device. Plaintiff cites no authority to support such a significant departure, nor is Lyft aware of any such authority in Illinois or otherwise. To the contrary, "modern cell phones [] are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014).

Indeed, courts in Illinois and elsewhere routinely enforce similar agreements that—as here—"require[] users to take affirmative action to manifest assent by clicking a button or a checkbox which accompanies a statement instructing users that their click would constitute their assent to the terms at issue." *Sgouros*, 2015 WL 507584, at *4 (collecting cases); *see also Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011) (citation omitted) ("Because clickwrap agreements require affirmative action on the part of the user to manifest assent, courts regularly uphold their validity when challenged."). And agreements "whose terms are displayed in a scrollable text window" are plainly enforceable—there is no requirement that an agreement jam all of its provisions on one page or screen as Plaintiff contends when he accuses Lyft of hiding an adhesion contract within its ToS. *Sgouros*, 2015 WL 507584, at *5; *see also Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1258 (10th Cir. 2012) (noting that clickwrap

agreements where a user is given an opportunity to review terms in a scrolling text box and must click an "I Agree" button are "routinely . . . upheld.") (Citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 33 (2d Cir. 2002) (citing cases in which clickwrap agreements were found to be enforceable, including where the agreement contained a scrolling text box with terms and an "I Agree" button)).

Contrary to Plaintiff's assertions, agreements like Lyft's ToS are standard within the modern world of smartphones and there is no evidence that similar contracts have been deemed contrary to public policy. On the other hand, as Plaintiff is no doubt aware, "Illinois public policy encourages arbitration…." as the First District held just this year. *Westlake Servs. LLC v. Williams*, 2025 IL App (1st) 241383, ¶ 18. Thus, Plaintiff's appeal to "public policy" to escape his contractual obligations and the *actual* public policy of Illinois in favor of arbitration is entirely unfounded.[2]

## III. <u>CONCLUSION</u>

For the foregoing reasons, Lyft respectfully requests that the Court grant this Motion, compel Plaintiff's claims against Lyft to binding arbitration pursuant to the Terms of Service, and stay the proceedings against Lyft pending the outcome of that arbitration.

---

2 Plaintiff also inserts a final argument concerning the inapplicability of Lyft's arbitration provision to cases involving sexual assault or harassment. He asserts that because Lyft and other corporations have exempted such cases from arbitration, so too should Plaintiff's case be exempted. It is undisputed that Plaintiff's case involves neither of those subjects and—despite Plaintiff's wishful thinking—he cannot retroactively exempt himself from a contractual provision (*i.e.*, arbitration) that he agreed to based on facts that do not apply to him.

Dated: November 10, 2025

Respectfully Submitted,

LYFT, INC.

By: ______________________
One of Its Attorneys

Eric Y. Choi
Gail E. Lee
Thomas N. Zahrt
NEAL, GERBER & EISENBERG LLP
225 W. Randolph St., Suite 2800
Chicago, Illinois 60606
Telephone: (312) 269-8000
Facsimile: (312) 980-0736
echoi@nge.com
glee@nge.com
tzahrt@nge.com

*Counsel for Defendant Lyft, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he electronically filed the foregoing Lyft's ***Reply in Support of its Motion to Compel Arbitration and Stay Proceedings*** using the CM/ECF system, which will send notice of this electronic filing to all counsel of record receiving electronic notification on November 10, 2025.

*/s/ Eric Y. Choi*

Attorney for Lyft, Inc.