**2026 IL 132066**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

---

(Docket No. 132066)

GLORIA SHERIDAN GELLER, as Independent Administrator of the Estate of Mark Geller, Deceased, Appellant, v. UBER TECHNOLOGIES, INC., *et al.*, Appellees.

*Opinion filed September 24, 2026.*

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Neville and Justices Holder White, Cunningham, Rochford, O'Brien, and Tailor concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Gloria Sheridan Geller (Sheridan), as the independent administrator of the estate of her deceased husband, Mark Geller, filed in the circuit court of Cook County a complaint against defendants, Uber Technologies, Inc.; Rasier, LLC, Uber's wholly owned subsidiary (collectively, Uber); and Ejaz Rathore (a deceased Uber driver), alleging wrongful death claims, survival claims, and negligence

claims based on *res ipsa loquitur*. See 740 ILCS 180/0.01 *et seq.* (West 2022) (Wrongful Death Act); 755 ILCS 5/27-6 (West 2022) (Survival Act); *Johnson v. Armstrong*, 2022 IL 127942, ¶ 23 (*res ipsa loquitur*). Uber filed a motion to dismiss or compel arbitration, relying on terms-of-use agreements, both of which included an arbitration section, executed by Mark and Sheridan individually. The circuit court granted Uber's motion to compel arbitration of the estate's survival claims based on Mark's agreement but denied Uber's motion to compel arbitration of the estate's wrongful death claims based on Sheridan's agreement. Uber appealed.

¶ 2 The Appellate Court, First District, reversed the circuit court's judgment, finding that Uber and Sheridan's arbitration agreement delegated the question of arbitrability—*i.e.*, whether the estate's wrongful death claims fall within the scope of Sheridan's arbitration agreement—to an arbitrator. 2025 IL App (1st) 241458-U, ¶¶ 1, 24. The appellate court remanded for further such proceedings. *Id.* The estate filed a petition for leave to appeal, which this court allowed. Ill. S. Ct. R. 315 (eff. Dec. 7, 2023).

¶ 3 This case asks whether Sheridan's individual arbitration agreement—governing claims arising from her personal use of Uber's services—obligates the estate to arbitrate the arbitrability of wrongful death claims, on her behalf as a statutory beneficiary under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)), where the wrongful death claims arise from Mark's personal use of Uber's services and resulting subsequent death. For the following reasons, we answer in the negative, reverse the judgment of the appellate court, and affirm the circuit court's order denying the motion to dismiss or compel arbitration of the estate's wrongful death claims.

¶ 4 BACKGROUND

¶ 5 Circuit Court

¶ 6 On April 19, 2022, Mark requested transportation through Uber's rideshare application. During the trip, his driver, Rathore, lost control of the vehicle on the expressway, resulting in a crash that fatally injured both Rathore and Mark. On February 21, 2023, the estate filed a nine-count, third-amended complaint against Uber and Rathore. The estate alleged that Rathore was negligent and that Uber was

vicariously liable, and it asserted negligence via *res ipsa loquitur*, survival claims (755 ILCS 5/27-6 (West 2022)), and wrongful death claims on behalf of Mark's statutory next of kin under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2022)).

¶ 7 Thereafter, Uber filed a motion to dismiss or, in the alternative, to stay proceedings and compel arbitration. See 735 ILCS 5/2-619(a)(9) (West 2022) (involuntary dismissal based upon certain defects or defenses); 9 U.S.C. §§ 2, 3, 4 (2018) (sections 2, 3, and 4 of the Federal Arbitration Act (FAA)); 710 ILCS 5/2(d) (West 2022) (section 2(d) of Illinois's implementation of the Uniform Arbitration Act). Uber asserted that, pursuant to its rideshare application, passengers download the rider version of Uber's application, drivers download the driver version,[1] and together, the applications allow users to access the platform that connects individuals in need of a ride with individuals willing to provide transportation services.

¶ 8 Uber asserted that, as a condition of using the rider application, customers create an account and accept Uber's terms-of-use agreement. Uber asserted that, when it updates its terms-of-use agreement, customers must accept the updated terms before they may utilize the rider application. As such, Uber asserted that Mark, as a rider, had agreed in the parties' Internet-based terms-of-use agreement to arbitrate the claims asserted in the action and attached Mark and Uber's agreement. In its motion, Uber asserted that Sheridan also agreed to arbitrate in a user agreement she executed when she created a user account, in the same manner Mark did.

¶ 9 Uber later submitted the following language found in section 2 of Sheridan's "U.S. Terms of Use" agreement, timestamped May 11, 2016:

"2. Arbitration Agreement

---

[1] Rasier, LLC, Uber's wholly owned subsidiary, sublicenses the driver version to independent drivers.

By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement. ***

(a) Agreement to Binding Arbitration Between You and Uber.

Except as expressly provided below in Section 2(b) [which excludes from arbitration, *inter alia*, claims brought in small claims court, claims of sexual assault or sexual harassment, or injunctive or other equitable relief to prevent copyright infringement], you and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.

***

This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties *** where their underlying claims are in relation to your use of the Services. ***

(b) Exceptions to Arbitration

* * *

(c) Rules and Governing Law

The arbitration will be administered by the American Arbitration Association ('AAA') ***.

The parties agree that the arbitrator ('Arbitrator'), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this

> Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.
>
> Notwithstanding any choice of law or other provision in the Terms, the parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the [FAA], 9 U.S.C. § 1 et seq. ('FAA'), will govern its interpretation and enforcement and proceedings pursuant thereto. It is the intent of the parties to be bound by the provisions of the FAA for all purposes, including, but not limited to, interpretation, implementation, enforcement, and administration of this Arbitration Agreement, and that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law.
>
> Any dispute, claim, or controversy arising out of or relating to incidents or accidents resulting in personal injury *** that you allege occurred in connection with your use of the Services *** shall be governed by *** the laws of the state in which the incident or accident occurred."

¶ 10 The circuit court granted, in part, Uber's motion by compelling arbitration of the estate's survival claims based on Mark's execution of Uber's terms-of-use agreement, not herein set forth, which included arbitration provisions. See *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶ 57 (*Carter II*) (arbitration agreement signed by decedent binds an estate to arbitrate a survival claim but not a wrongful death claim). The circuit court denied Uber's request to compel arbitration of the estate's wrongful death claims and thereby stayed the wrongful death claims pending resolution of the arbitration of the survival claims. See *id.* (arbitration agreement signed by decedent does not bind estate to arbitrate wrongful death claim that is derivative of decedent's death and not part of the estate's assets that the decedent can limit via arbitration agreement during his lifetime). The circuit court found Sheridan's arbitration agreement "largely irrelevant to the claims [the estate] is asserting on the wrongful death[ ] because *** [her] arbitration agreement talks about her usage; not her husband's usage" and therefore the estate's wrongful death

claims were not subject to arbitration. The estate orally moved to voluntarily dismiss the survival actions, and the circuit court entered its corresponding order allowing the dismissal.

¶ 11 Uber filed an interlocutory appeal from the circuit court's denial of its motion to compel arbitration of the estate's wrongful death claims. See Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017); *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001) (order granting or denying motion to compel arbitration "is injunctive in nature and subject to interlocutory appeal under paragraph (a)(1) of [Rule 307]").

¶ 12 Appellate Court

¶ 13 The appellate court reversed the circuit court's denial of Uber's motion to compel arbitration of the estate's wrongful death claims. 2025 IL App (1st) 241458-U, ¶ 1. The appellate court identified in the arbitration agreement a delegation clause, delegating to the arbitrator in subsection 2(c) the "authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation" of the arbitration agreement. See *id.* ¶ 20. The appellate court noted, however, that although the agreement's language also provided that the arbitrator " 'determine[e] *** whether the [t]erms are *** unconscionable,' " the court was required to determine the unconscionability question. *Id.* The appellate court explained that, if it found the arbitration agreement unconscionable, it could not enforce the delegation clause, delegating arbitrability to an arbitrator, within the unconscionable arbitration agreement. *Id.*

¶ 14 The appellate court held that "a delegation clause cannot delegate the general validity of an arbitration agreement to the arbitrator." *Id.* The appellate court explained that, "when a party challenges the validity of an arbitration agreement, the 'court *must* consider the challenge before ordering compliance' with the arbitration agreement even if a delegation clause purports to reserve that issue for the arbitrator. (Emphasis in original.)" *Id.* (quoting *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024)). The appellate court thereby proceeded to evaluate whether the arbitration provisions in Sheridan's terms-of-use agreement were unconscionable. *Id.*

¶ 15 On review, the appellate court concluded that Sheridan's arbitration agreement was neither procedurally unconscionable (*id.* ¶ 24) nor substantively unconscionable (*id.* ¶ 29). In rejecting the estate's contention that the agreement was unconscionable, the appellate court concluded that the delegation clause in Uber and Sheridan's arbitration agreement delegates the arbitrability dispute to the arbitrator, not the court, for resolution. *Id.* ¶¶ 18-20. Thus, the appellate court concluded that the circuit court lacked authority to find that the estate's wrongful death claims were not subject to arbitration pursuant to Sheridan's arbitration agreement with Uber. *Id.* ¶ 36. The appellate court remanded the cause for further proceedings consistent with its order. *Id.* ¶ 44.

¶ 16 On July 1, 2025, the estate filed its petition for leave to appeal to this court, and this court allowed its petition. Ill. S. Ct. R. 315 (eff. Dec. 7, 2023). The Illinois Trial Lawyers Association and the American Association for Justice filed an *amicus curiae* brief in support of the estate's position on appeal, as did the Women's Bar Association of Illinois, the Illinois Coalition Against Sexual Assault, and the Victim Rights Law Center. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). The Chamber of Commerce of the United States of America and the Illinois Chamber of Commerce filed an *amicus curiae* brief in support of Uber's position on appeal.

¶ 17 ANALYSIS

¶ 18 On appeal, the estate argues that the appellate court erred in holding that its wrongful death claims belonged to Sheridan in her capacity as a statutory wrongful death beneficiary, in compelling arbitration of the arbitrability of the wrongful death claims based on Sheridan's agreement with Uber, and in finding that Uber's terms of use were not unconscionable. Uber counters that the appellate court properly concluded that Sheridan's arbitration agreement with Uber mandates that an arbitrator must decide if the estate's wrongful death claims are arbitrable and that, although the circuit court should have refrained from deciding the issue of unconscionability, it properly concluded that the arbitration agreement was not unconscionable. For the following reasons, we hold that the appellate court erred by not addressing, as a threshold matter, whether Sheridan contracted with Uber to arbitrate the issue of the arbitrability of Mark's estate's wrongful death dispute. Further, because we find that they did not so contract, there is no reason to address

the issue of unconscionability.

¶ 19 Standard of Review

¶ 20 Section 2-619(a)(9) of the Code of Civil Procedure allows for a dismissal of a claim or other appropriate relief, such as a stay of the proceedings, where the claim is barred by an affirmative matter—such as the exclusive remedy of arbitration—that avoids the legal effect of or defeats a claim. 735 ILCS 5/2-619(a)(9) (West 2022). Here, this court reviews *de novo* the circuit court's denial of Uber's motion to compel the arbitration of the arbitrability of the estate's wrongful death claims and the underlying dispute. See *Clanton v. Oakbrook Healthcare Centre, Ltd.*, 2023 IL 129067, ¶ 31.

¶ 21 Illinois Wrongful Death Act Principles

¶ 22 "At common law, no cause of action existed to recover damages for the wrongful death of another, and a cause of action abated at the death of the injured party." *Carter II*, 2012 IL 113204, ¶ 32. "Thus, ' "it was cheaper for the defendant to kill the plaintiff than to injure him." ' " *Id.* (quoting *Williams v. Manchester*, 228 Ill. 2d 404, 418 (2008), quoting Prosser and Keeton on the Law of Torts § 127, at 945 (W. Page Keeton *et al.* eds., 5th ed. 1984)). "In 1853, however, the legislature adopted the Injuries Act (1853 Ill. Laws 97), now known as the Wrongful Death Act, creating a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of the death of the injured person." *Id.*

¶ 23 Section 1 of the Wrongful Death Act provides:

> "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages ***." 740 ILCS 180/1 (West 2022).

¶ 24 "Although section 2 provides that every wrongful-death action shall be brought by and in the names of the 'personal representatives' of the deceased, the action is

filed for the 'exclusive benefit of the surviving spouse and next of kin of such deceased person.' 740 ILCS 180/2 (West 2006)." *Carter II*, 2012 IL 113204, ¶ 33. "Thus, the personal representative in a wrongful-death claim is 'merely a nominal party to this action, effectively filing suit as a statutory trustee on behalf of the surviving spouse and next of kin, who are the true parties in interest.' " *Id.* (quoting *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (2002)); see *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 361 (1995) (statutory requirement that wrongful death action be brought by and in the name of the personal representative serves to avoid a multiplicity of suits by the next of kin and ensures that the interests of the beneficiaries are protected). "The identity of the personal representative who filed the complaint is irrelevant since the representative is merely a nominal party acting on behalf of the true beneficial plaintiffs ***." *Glenn*, 198 Ill. 2d at 583-84.

¶ 25 In this case, the parties submit that Sheridan, as independent administrator of the estate and Mark's spouse, is both the personal representative of the estate and the statutory beneficiary under the Wrongful Death Act. Thus, Sheridan appears in this litigation in distinct legal capacities: first, as an individual Uber user who accepted contractual terms governing her own transportation activities; second, as a statutory beneficiary under the Wrongful Death Act; and third, as independent administrator and personal representative of the estate. As personal representative of the estate, Sheridan is the nominal party asserting wrongful death claims brought for her benefit (and any other next of kin) as statutory beneficiaries of the wrongful death claims.

¶ 26 "A wrongful-death action is perhaps best understood when contrasted with an action under our so-called 'Survival Act,' now section 27-6 of the Probate Act of 1975. 755 ILCS 5/27-6 (West 2006)." *Carter II*, 2012 IL 113204, ¶ 34. "The Survival Act allows an action *** to survive the death of the injured person." *Id.* "Whereas the Wrongful Death Act created a new cause of action that does not accrue until death, the Survival Act simply allows a representative of the decedent to maintain those statutory or common law actions that had already accrued to the decedent prior to death." *Id.* As explained previously by this court:

> " 'A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the

deceased rather than the injuries personally suffered by the deceased prior to death.' " *Id.* (quoting *Wyness v. Armstrong World Industry, Inc.*, 131 Ill. 2d 403, 410 (1989)).

¶ 27 This court has held that, pursuant to the plain language of the Wrongful Death Act, examined in light of the statute as a whole, the money recovered under the Wrongful Death Act should not be treated as part of the estate of the deceased. *Id.* ¶ 40. Instead, the right to receive wrongful death benefits is an asset of the next of kin and, should they die, the estate of the next of kin; "it is not an asset of the estate of the decedent who is the subject of the wrongful-death action." *Id.* ¶ 41 (citing *National Bank of Bloomington v. Podgorski*, 57 Ill. App. 3d 265, 267 (1978)). Accordingly, a wrongful death action filed by a surviving spouse or next of kin is not an asset of the deceased's estate that can be limited via the deceased's arbitration agreement with defendant. See *id.* ¶ 46.

¶ 28 Here, the circuit court applied these principles when it concluded that Mark's execution of Uber's terms-of-use agreement, involving claims arising from his own use of Uber's services and including arbitration and delegation-of-arbitrability provisions, relegated the estate's *survival* claims to arbitration. See *id.* ¶ 57. In this appeal, however, Mark's execution of Uber's arbitration provisions becomes irrelevant for purposes of the estate's *wrongful death* claims. See *id.* As a result, Uber seeks to use the arbitration and delegation-of-arbitrability provisions in Sheridan's own terms-of-use agreement with Uber, to require Sheridan to arbitrate claims she has brought against Uber in her capacity as personal representative of Mark's estate or as the wrongful death statutory beneficiary. However, Sheridan's terms-of-use agreement with Uber involves claims arising from her own "access to or use of" Uber's services in her individual capacity, and the estate's wrongful death claims in this case arise from injuries Mark subsequently sustained from his access to and use of Uber's services.

¶ 29 Accordingly, to determine whether the circuit court properly denied Uber's motion to compel arbitration in this case, we address two questions: (1) whether Sheridan clearly and unmistakably agreed to delegate arbitrability of the estate's wrongful death claims to an arbitrator and (2) whether, absent delegation, the wrongful death claims fall within the scope of Sheridan's agreement to arbitrate the

underlying dispute. We answer both questions in the negative.

¶ 30 Delegation of Arbitrability

¶ 31 *Contract Formation and Delegation Clause Requirements*

¶ 32 This court's first task is to determine whether Sheridan clearly and unmistakably consented to delegate to an arbitrator the authority to decide arbitrability of wrongful death claims arising from Mark's use of Uber's services. The Wrongful Death Act's provision allowing a jury to determine damages for wrongful death claims (740 ILCS 180/2 (West 2022)) is consistent with the right to access a court to adjudicate a civil dispute. The guarantee to the right to trial by jury in civil actions in federal courts has been said to " 'occup[y] so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.' " *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Likewise, the Illinois Constitution guarantees civil litigants in Illinois courts the constitutional right to a jury trial, as that right was recognized before the adoption of the Illinois Constitution in 1970. See Ill. Const. 1970, art. I, § 13; *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 215 (1988). "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

¶ 33 Even so, "it is axiomatic that a party may waive the right to a trial by jury in a civil case by entering into a contract to arbitrate." *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 49 (2010) (*Carter I*). Where a party has agreed to arbitrate, he has relinquished much of the practical value of the right to a court's decision because a court will set aside an arbitrator's decision only in very unusual circumstances. *First Options*, 514 U.S. at 942. "Hence, who—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration." *Id.*

¶ 34 "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648-49 (1986). "[P]arties can form multiple levels of agreements concerning arbitration."

*Coinbase*, 602 U.S. at 148. At a basic level, parties can agree to send the merits of a dispute, *i.e.*, the parties' underlying grievance, to an arbitrator. *Id.* Parties to an arbitration agreement may also agree to allow an arbitrator to decide "gateway" questions of "arbitrability," such as whether their agreement covers a particular controversy. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).

¶ 35 "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the *** court to enforce ***." *Id.* at 70. The agreement to arbitrate a gateway issue is considered a "delegation provision" because it reflects the parties' decision to delegate arbitrability, *i.e.*, whether the dispute is arbitrable, to the arbitrator instead of having a court decide. *Id.* at 68-69 ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."); *New Prime Inc. v. Oliveira*, 586 U.S. 105, 112 (2019) ("A delegation clause is merely a specialized type of arbitration agreement ***.").

¶ 36 Because delegation is an exception to the general rule that arbitrability is a question for the courts, the party seeking delegation must show the parties' intent to delegate arbitrability by "clea[r] and unmistakabl[e] evidence." (Internal quotation marks omitted.) *Coinbase*, 602 U.S. at 149 (courts may find that parties agreed to arbitrate arbitrability only upon clear and unmistakable evidence). The more rigorous standard of clear and unmistakable evidence that applies when the inquiry is whether the parties have agreed to arbitrate arbitrability is a type of reverse presumption—one in favor of a judicial, rather than an arbitral, forum. *First Options*, 514 U.S. at 944-45. It is a reverse presumption because it is counter to the presumption applied in favor of arbitration when the question is whether a particular dispute falls within the scope of a concededly binding arbitration agreement. *Id.*

¶ 37 The United States Supreme Court has found that, for purposes of applying the interpretive rule, the phrase "question of arbitrability," traditionally a question for the courts, is "applicable *** where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). In contrast, procedural questions arising from the dispute and bearing on its final disposition are presumptively not for the judge but for an arbitrator to decide.

*Id.* at 85 (holding National Association of Securities Dealers time limit rule is a matter for the arbitrator, not the judge); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964) (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983) (holding that arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability).

¶ 38 Like any other contract, arbitration, including the arbitration of arbitrability, "is strictly a matter of consent," not coercion. (Internal quotation marks omitted.) *Coinbase*, 602 U.S. at 148; see *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989). Where a party contests the formation of the parties' delegation of arbitrability agreement, the court must first resolve the formation disagreement. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010) (it is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"); *id.* at 296-300 (collecting cases); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) (issues relating to formation of arbitration agreement are to be decided by the court, not by an arbitrator). In other words, to compel arbitration based on a delegation clause, a court must first determine that the parties agreed pursuant to the delegation clause to arbitrate arbitrability of the dispute. *Coinbase*, 602 U.S. at 149; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Granite Rock*, 561 U.S. at 300. "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute *** the question [of] 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." (Emphasis in original.) *First Options*, 514 U.S. at 943.

¶ 39 Accordingly, "the question of who decides arbitrability is itself a question of contract." *Henry Schein*, 586 U.S. at 65. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally **** should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Under Illinois law, an enforceable agreement includes an offer, acceptance, consideration, and mutual assent. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006); *Academy Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). To establish mutual assent, otherwise known as a meeting of the

minds, the terms must be so definite that "the promises and performances to be rendered by each party are reasonably certain." *Academy Chicago Publishers*, 144 Ill. 2d at 29. As a matter of contract, arbitration, including any agreement to delegate questions of arbitrability, depends upon the parties' mutual assent. *First Options*, 514 U.S. at 943-45.

¶ 40 A party simply cannot be required to arbitrate arbitrability absent a clear and unmistakable agreement to do so. *Id.* The Supreme Court has explained:

> "[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *Id.* at 945.

¶ 41 Applying these principles, before this court may send the threshold question of arbitrability to the arbitrator under the delegation clause, it must be satisfied that the parties agreed by "clear and unmistakable evidence" to do so. *Id.* at 944; *Henry Schein*, 586 U.S. at 69; see *Rent-A-Center*, 561 U.S. at 71 (if party challenges precise agreement to arbitrate at issue, court must consider challenge before ordering compliance with that agreement). This court is tasked with resolving whether the parties agreed to delegate arbitrability to an arbitrator in the first place because, if they did not form such an agreement, then there is no basis to compel arbitration of arbitrability, *i.e.*, to delegate the question of arbitrability to an arbitrator. See *First Options*, 514 U.S. at 944.

¶ 42 Here, the parties dispute whether they consented to delegate to arbitration the arbitrability of the estate's wrongful death claims, which are unrelated to Sheridan's use of Uber's services. Sheridan's terms-of-use agreement included a delegation clause in section 2(c), granting the arbitrator authority to resolve disputes "relating to the interpretation, applicability, enforceability or formation" of the arbitration agreement, including threshold issues such as unconscionability, enforceability, and applicability. Sheridan's arbitration agreement with Uber also incorporated American Arbitration Association (AAA) rules, which generally empower arbitrators to decide questions of arbitrability. See Am. Arb. Ass'n Consumer Arb. Rules & Mediation Procs. R-7(a), (b) (eff. May 1, 2025); see also *Allscripts*

*Healthcare, LLC v. Etransmedia Technology, Inc.*, 188 F. Supp. 3d 696, 701 (N.D. Ill. 2016) (holding that an agreement incorporating AAA rules supports arbitration of arbitrability and citing cases).

¶ 43 Nevertheless, although incorporating AAA rules along with a delegation provision may constitute sufficient evidence of consent to delegate arbitrability in some contexts, Sheridan and Uber's arbitration agreement here is limited to "claim[s] *** arising out of or relating to *** your access to or use of the [s]ervices," personal injury "in connection with your use of the [s]ervices," and third party claims "in relation to your use of the [s]ervices." This language limits delegation of arbitrability to disputes arising out of Sheridan's own use and relationship with Uber.

¶ 44 Uber would have us ignore that the delegation of arbitrability provision in Sheridan's terms-of-use agreement repeatedly references the "[a]rbitration [a]greement" and its terms and is found within the arbitration section's repetitive phrasing that the disputes in the agreement, thereby subject to arbitration, including the arbitration of arbitrability, arise in connection with Sheridan's use of Uber's services individually. See generally *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 316 (2008) (contract language must be read in context). Yet, because of this language, we cannot conclude that clear and unmistakable evidence supports the determination that Sheridan, as statutory beneficiary or personal representative of the estate, agreed to arbitrate the arbitrability of wrongful death claims arising from a third person's use and contractual relationship with Uber. See generally *Olson v. FCA US, LLC*, 176 F.4th 612, 619 (9th Cir. 2026) (finding no clear and unmistakable evidence that plaintiffs agreed to arbitrate arbitrability with third party who had no connection to the underlying arbitration agreement).

¶ 45 The estate's wrongful death claims arise from Mark's death, which resulted from his own use of Uber's services. See *First Options*, 514 U.S. at 942; see generally *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006) (courts are not bound to reach absurd results). Accordingly, we agree with the circuit court and find no clear and unmistakable agreement to delegate arbitrability of this dispute to an arbitrator rather than the court. See *Metropolitan Life Insurance Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("[W]hat the arbitration agreement says about whether a category of dispute is arbitrable can have an important bearing on whether it was

the intention of the agreement to confer authority over arbitrability on arbitrators.").

¶ 46 *FAA Constraints*

¶ 47 Moreover, as the estate observes, the FAA, incorporated by reference in Sheridan's arbitration agreement with Uber, reinforces our conclusion. See *New Prime*, 586 U.S. at 112 (even though a contract may delegate question of arbitrability to an arbitrator, a court must nevertheless decide for itself first that the court has authority under the FAA to order it). We proceed from the premise that, as expressly stated in section 2(c) of the arbitration portion of Sheridan's terms-of-use agreement with Uber, the FAA will govern the interpretation, enforcement, and proceedings. Section two of the FAA provides that "[a] written provision in *** a contract evidencing a transaction involving commerce to settle by arbitration *a controversy thereafter arising out of such contract or transaction*" shall be valid and enforceable. (Emphasis added.) 9 U.S.C. § 2; see *Carter II*, 2012 IL 113204, ¶ 17. This statutory limitation reinforces that Sheridan's agreement presupposes disputes tied to her contractual relationship with Uber. Because the estate's wrongful death claims arise exclusively from Mark's distinct use of Uber's services, section 2's FAA threshold requirement is unmet. The FAA itself confirms the lack of foundation to compel arbitration of arbitrability for claims unrelated to Sheridan's own contractual use.

¶ 48 In sum, Sheridan consented to Uber's arbitration provisions, including the delegation language, but those provisions, like the FAA, presuppose that the disputes subject to arbitration, including the arbitration of arbitrability, arise from her own contractual relationship with Uber. The arbitration terms repeatedly frame arbitrable matters as those arising from her own access to Uber's services. Nothing in the FAA or in the terms-of-use agreement suggests that an agreement formed by one user may delegate to an arbitrator arbitrability of a dispute arising solely from another person's separate contract and use of Uber's services. See *Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 474 (Ct. App. 2020) (no authority, including the FAA, permits sending unrelated disputes to arbitration simply because the same parties agreed to arbitrate a different matter).

¶ 49 Even though the FAA directs courts to place arbitration agreements—including agreements that an arbitrator rather than a court resolve arbitrability—on equal

footing with other contracts, the FAA does not require parties to arbitrate, even arbitrability, when they have not agreed to do so. *Volt Information Sciences*, 489 U.S. at 478; see *Carter II*, 2012 IL 113204, ¶ 55. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center*, 561 U.S. at 67 (court, not arbitrator, determined whether the delegation provision was valid under section 2 of the FAA). The FAA requires the court to enforce arbitration agreements according to their terms, but only according to the parties' actual agreement, not beyond it. *Volt Information Sciences*, 489 U.S. at 478. Nothing in the FAA authorizes requiring arbitration of the arbitrability of an unrelated claim outside the contract that the parties never agreed to arbitrate. See *New Prime*, 586 U.S. at 112-13 (despite delegation clause, court determined arbitrability—whether to compel arbitration of a "contract of employment" exempted by section 1 of the FAA—and found court lacked authority under the FAA's exemption language to order arbitration); see also *Moritz*, 268 Cal. Rptr. 3d at 473; *Matthew-Ajayi v. Airbnb, Inc.*, No. ADC-23-3035, 2024 WL 1769186, at *2 (D. Md. Apr. 24, 2024).

¶ 50 *Supreme Court Framework (*Henry Schein, New Prime, Coinbase*)*

¶ 51 Uber and *amici* argue that, if this court concludes that a claim must be sufficiently "related to" an arbitration agreement before enforcing a delegation clause, we would simply be applying the "wholly groundless" exception that the United States Supreme Court in *Henry Schein* expressly rejected. See *Henry Schein*, 586 U.S. at 69. We disagree.

¶ 52 Prior to *Henry Schein*, even where parties agreed to delegate the arbitrability question to an arbitrator, some federal courts "short-circuit[ed] the process and decide[d] the arbitrability question themselves if the argument that the arbitration agreement applie[d] to the particular dispute [wa]s 'wholly groundless.' " *Id.* at 65. The district court and court of appeals in *Henry Schein* resolved the threshold question of arbitrability and denied Schein's motion to compel arbitration, finding that Schein's argument for arbitration was wholly groundless because the complaint sought injunctive relief, at least in part, and the arbitration agreement barred arbitration of disputes when plaintiff sought injunctive relief. *Id.* at 67. The Court in *Henry Schein* rejected this approach and held that, where the parties' agreement

delegates threshold arbitrability questions to the arbitrator by clear and unmistakable evidence, courts may not refuse to enforce the delegation of arbitrability clause on the ground that the assertion of arbitrability is "wholly groundless." *Id.* The Court stated:

> "We have held that a court may not 'rule on the potential merits of the underlying' claim that is assigned by contract to an arbitrator, 'even if it appears to the court to be frivolous.' *AT&T Technologies*[, 475 U.S. at 649-50]. A court has ' "no business weighing the merits of the grievance" ' because the ' "agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." ' *Id.*, at 650 (quoting *Steelworkers v. American Mfg. Co.*, 363 U. S. 564, 568 (1960))." *Id.* at 68-69.

¶ 53 The federal appellate decisions that applied the "wholly groundless" approach rejected by *Henry Schein* either found clear and unmistakable evidence that the parties consented to arbitrate the questions of arbitrability of the dispute, treated consent to the delegation clause as undisputed, or declined to resolve the delegation question at all, concluding in the alternative that the assertion of arbitrability was wholly groundless. See *id.* (discussing the Fifth Circuit's decision in *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488, 495 (5th Cir. 2017), where the court declined to decide whether the agreement clearly and unmistakably delegated arbitrability because it found, in the alternative, that the assertion of arbitrability was wholly groundless); see also *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522 (4th Cir. 2017); *Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014); *Turi v. Main Street Adoption Servs., LLP*, 633 F.3d 496 (6th Cir. 2011); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed. Cir. 2006). However, we find here that Sheridan's arbitration agreement, limited to claims arising from her use of the services, provides no clear and unmistakable evidence that the parties consented to arbitrate the arbitrability of the wrongful death claims arising from Mark's death.

¶ 54 Notably, the Court in *Henry Schein* reemphasized that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein*, 586 U.S. at 69 (quoting *First Options*, 514 U.S. at 944). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision

*as embodied in the contract*." (Emphasis added.) *Id.* at 65. The Court in *Henry Schein* presupposed that the parties entered into an arbitration agreement delegating the arbitrability issue to an arbitrator. See *id.* at 69 (citing 9 U.S.C. § 2). The Court emphasized the remaining premise that, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Id.*

¶ 55 Indeed, the Court in *Henry Schein* "express[ed] no view about whether the contract at issue in th[e] case in fact delegated the arbitrability question to an arbitrator" because the court of appeals did not decide that issue. *Id.* at 71-72. Noting that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they do so," the Court directed the court of appeals to address the issue on remand. *Id.* at 72 (quoting *First Options*, 514 U.S. at 944). *Henry Schein* thus presupposed a valid delegation agreement; it did not license courts to skip the antecedent inquiry whether these parties clearly and unmistakably agreed to arbitrate this arbitrability dispute.

¶ 56 Moreover, the Court's contemporaneous and subsequent reiteration after *Henry Schein*—that arbitration of arbitrability remains a matter of consent and contract formation for the court to determine initially—supports our conclusion here. See *Coinbase*, 602 U.S. at 145; *New Prime*, 586 U.S. at 112. As noted, contemporary with *Henry Schein*, the Court in *New Prime* held that, even though a contract may delegate some questions of arbitrability to an arbitrator, the Court should nevertheless decide for itself first whether the FAA allows the delegation of arbitration. *New Prime*, 586 U.S. at 112. The Court in *New Prime* considered whether the FAA's exclusion for " 'contracts of employment' " of certain transportation workers applied before ordering arbitration of arbitrability. *Id.* The Court explained that it may enforce a delegation clause pursuant to the FAA only if the clause appears in a " 'written provision in *** a contract evidencing a transaction involving commerce' " consistent with section 2 of the FAA and only if the contract in which the clause appears does not trigger section 1's "contracts of employment" exception. *Id.* (quoting 9 U.S.C. § 2). The Court concluded that, because the arbitration agreement, including the delegation provision, fell within the FAA's exception found in section 1, the court lacked authority under the FAA to order arbitration—including arbitration of arbitrability. *Id.* at 121. The Court noted that the FAA acted on the delegation clause, merely a specialized type of arbitration agreement, as it does any other agreement. *Id.* at 112.

¶ 57 Subsequent to the decisions in *Henry Schein* and *New Prime*, the Court in *Coinbase* addressed whether two parties who had executed two contracts, the first containing an arbitration provision with a delegation clause and the second containing a forum selection clause, must submit the arbitrability question to an arbitrator. *Coinbase*, 602 U.S. at 145. Coinbase insisted that the first contract's delegation clause established the terms by which all subsequent disputes were to be resolved, so the arbitrability of a dispute between the parties was a matter for the arbitrator to decide. *Id.* The Court held that, "before either the delegation provision or the forum selection clause c[ould] be enforced, a court needs to decide what the parties have agreed to—*i.e.*, which contract controls." *Id.*

¶ 58 In *Coinbase*, the Court reiterated that arbitration agreements are strictly a matter of consent and that the parties resolve through arbitration only those disputes they have agreed to submit to an arbitrator. *Id.* at 148. The Court stated that, "[c]onsequently, the first question in any arbitration dispute must be: What have these parties agreed to?" *Id.*

¶ 59 The Court reiterated that courts may not assume parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. *Id.* at 149. Citing *Henry Schein*, the Court noted that, before referring the arbitrability dispute to an arbitrator, a court must determine whether the parties agreed to arbitrate arbitrability. *Id.* (" 'the court determines whether a valid arbitration agreement exists' " (quoting *Henry Schein*, 586 U.S. at 69)). The Court held that it was tasked with determining which contract governed, for "[t]o hold otherwise would be to impermissibly ' "elevate [a delegation provision] over other forms of contract." ' " *Id.* at 152 (quoting *Rent-A-Center*, 561 U.S. at 71, quoting *Prima Paint*, 388 U.S. at 404 n.12).

¶ 60 In sum, the United States Supreme Court's recent arbitration jurisprudence establishes a coherent sequence governing the enforcement of delegation clauses. In *Henry Schein*, the Court held that, once parties have clearly and unmistakably agreed to delegate questions of arbitrability, a court may not refuse to honor that delegation based on its own assessment that the argument for arbitration is weak or "wholly groundless." That principle, however, presupposes that the parties consented to the delegation of arbitrability regarding the dispute. In *New Prime*, the Court emphasized that courts retain their traditional responsibility to determine, as

a threshold matter, whether the FAA authorizes enforcement of a delegation clause at all, including whether statutory exclusions or formation defects prevent arbitration. In *Coinbase*, the Court reaffirmed that a delegation provision cannot be applied until a court first determines what contract the parties agreed to and whether that contract actually contains—and governs—the asserted delegation. Read together, these decisions make clear that delegation is not automatic; rather, it is enforceable only when the parties have clearly and unmistakably consented to arbitrate arbitrability of the dispute at issue, and the court must resolve that foundational question before referring any matter to an arbitrator.

¶ 61 *Application to Sheridan's Agreement*

¶ 62 Accordingly, Uber's reliance upon *Henry Schein* is misplaced. Our decision does not rest upon the conclusion that Uber's assertion of arbitrability is "wholly groundless," nor do we undertake the merits determination forbidden by *Henry Schein*. Rather, we resolve the antecedent question expressly preserved by that decision—whether an agreement exists, through clear and unmistakable evidence, requiring Sheridan to delegate to an arbitrator the arbitrability of wrongful death claims arising from a third person's contractual agreement, to which Sheridan was not a party. *Henry Schein* did not eliminate the court's foundational responsibility to determine whether clear and convincing evidence supports the conclusion that the parties consented to arbitrate the arbitrability of the dispute in the first place. *First Options*, 514 U.S. at 942; *AT&T Technologies*, 475 U.S. at 648-49. Only then does *Henry Schein*'s bar on the "wholly groundless" exception come into play. *Henry Schein*, 586 U.S. at 71-72. And even where a contract contains a delegation clause, a court must consider FAA limits on the delegation agreement. See *New Prime*, 586 U.S. at 112-13.

¶ 63 Although Sheridan agreed to arbitrate the arbitrability of disputes arising out of her use of Uber's services, Uber has failed to establish that Sheridan, as statutory beneficiary or as the estate's personal representative, agreed by clear and unmistakable evidence to delegate the arbitrability of wrongful death claims predicated upon Mark's use of Uber's services. Accordingly, *Henry Schein* does not compel referral of the threshold question of arbitrability to the arbitrator. See *Moritz*, 268 Cal. Rptr. 3d at 475-76 (holding that *Henry Schein* "expressly

understood that the [FAA] requires enforcement of arbitration clauses with respect to disputes thereafter arising out of such contract" and rejecting the argument that "an arbitration provision creates a perpetual obligation to arbitrate any conceivable claim that [plaintiff] might ever have against them" (internal quotation marks omitted)); *Slaughter v. National R.R. Passenger Corp.*, 460 F. Supp. 3d 1, 7-8, 11 (D.D.C. 2020) (holding that *Henry Schein* reaffirmed that court must determine whether parties agreed to arbitrate particular dispute and that delegation clause did not require arbitration of arbitrability where plaintiff's claims arose from a different course of dealing).

¶ 64 *Appellate Caselaw Construing* Henry Schein

¶ 65 Uber contends that post-*Henry Schein*, the arbitrator must decide whether Sheridan's agreement covers the wrongful death claims here, even if those claims are unrelated to Sheridan's own use, because Sheridan signed the terms-of-use agreement that included a delegation clause. Uber and the appellate court's opinion consolidate the question of whether the parties consented to arbitrate the arbitrability of claims arising from a third party's use of Uber's services with the question of whether the claims fall within the scope of Sheridan's agreement. The appellate court held that "[t]he question here is who decides whether Sheridan's claims for wrongful death fall within the scope of her arbitration agreement with Uber." (Emphases omitted.) 2025 IL App (1st) 241458-U, ¶ 38.

¶ 66 However, while the question of whether a claim falls within the scope of an arbitration agreement may ordinarily be for the arbitrator if delegation is clear and unmistakable, the court must first determine whether the parties clearly and unmistakably consented to delegate that question. Here, the appellate court skipped over the initial question: whether Sheridan, as a statutory beneficiary or personal representative of Mark's estate, clearly and unmistakably agreed to arbitrate the arbitrability of wrongful death claims arising from Mark's death because of his use of Uber's services. A delegation provision is itself an arbitration agreement; it cannot be enforced unless the parties consented to arbitrate arbitrability for this dispute. See *New Prime*, 586 U.S. at 112-13 (even despite delegation clause, courts must confirm the existence of a valid agreement covering the dispute before enforcing delegation); *Rent-A-Center*, 561 U.S. at 71 (if party challenges precise

agreement to arbitrate at issue, court must consider challenge before ordering compliance with the agreement).

¶ 67 The agreement submitted defines the contracting relationship entirely by reference to Sheridan's own individual access to and use of Uber's services. The present dispute arises solely from Mark's use of Uber's services. The absence of a clear and unmistakable agreement to delegate the arbitrability of wrongful death claims resulting from a third party's use of Uber's services prevents this court from compelling an arbitrator to determine arbitrability in this case. We recognize, however, that the line between whether a claim falls within the scope of a delegation-of-arbitrability agreement and whether the parties clearly and unmistakably agreed, consistent with the FAA, to delegate the arbitrability of the claim in the first place is a fine one and that we are met with cases not wholly consistent, even in the wrongful death context. See *Airbnb, Inc. v. Rice*, 518 P.3d 88, 92 (Nev. 2022) (even though wrongful death and personal injury claims appeared unrelated to the booking contract, *Henry Schein* foreclosed a "wholly unrelated" exception, so the arbitrator must determine arbitrability). But see *Tao v. Murphy*, 812 F. Supp. 3d 1117, 1125 (D. Nev. 2025) (recognizing tension between *Henry Schein* and FAA section 2's "arising out of" language, federal district court applied the absurd-results canon, held that plaintiff and Airbnb did not form an arbitration agreement over wholly unrelated dispute arising from another person's conduct unrelated to his own account, and held that delegation agreement did not require parties to delegate arbitrability over wholly unrelated dispute to an arbitrator).

¶ 68 Within Illinois, the appellate court's decision in this case contrasts with the decision of the Appellate Court, First District, in *Peterson v. Devita*, 2023 IL App (1st) 230356, ¶ 2, where the court held that, even though the arbitration agreement at issue included a delegation provision, the arbitration did not relate to allegations in the complaint and, therefore, did not bind the guest to arbitrate arbitrability. In *Peterson*, a guest at a rental property filed a complaint against Airbnb, Inc. (Airbnb), an online community marketplace, for injuries he sustained when he fell from an elevated porch at a property that a third party had booked through Airbnb. *Id.* Years prior, the plaintiff-guest had accepted an arbitration agreement contained in Airbnb's terms of service but had never utilized the Airbnb site. *Id.* ¶ 4. The agreement provided that claims and disputes " 'arising out of or relating to' " use

of Airbnb's platform be arbitrated and that an arbitrator must decide the threshold issue of arbitrability. *Id.* ¶ 2.

¶ 69 In *Peterson*, the appellate court held that the threshold question of arbitrability presents a legal issue for the court to decide, despite the arbitration agreement's clause stating otherwise. *Id.* ¶ 4. The appellate court further held that, because the plaintiff-guest had "nothing to do with booking the property on Airbnb, his injuries did not arise from his use of the Airbnb platform, so the arbitration provision d[id] not apply to him." *Id.* The appellate court held that "[t]he arbitration provision should apply only when the claims arise from a plaintiff's use of the Airbnb platform and not on the fortuity of a plaintiff having created an account." *Id.* ¶ 35. The appellate court concluded that "Peterson was not a party or participant in booking the property where the accident occurred and cannot be required to arbitrate under the facts." *Id.* ¶ 37. Because the court found no binding arbitration agreement, it did not address Airbnb's arguments regarding whether Peterson's claims fell within the agreement's scope. *Id.* As in *Peterson*, where a guest injured at an Airbnb property could not be compelled to arbitrate based on an agreement governing a third party's use or contractual agreement with the defendant, Sheridan did not agree to arbitrate the arbitrability of wrongful death claims arising from a third person's use of, access to, and contractual relationship with Uber. Our reasoning is consistent with *Peterson*.

¶ 70 The delegation of arbitrability provision here is textually tethered to the arbitration provisions of the terms-of-use agreement containing both, and it applies only where the dispute has a real source in the contract. See *Moritz*, 268 Cal. Rptr. 3d at 476. The dispute in this case involves an unrelated, wrongful death of a third party and thereby "lacks what *[Henry] Schein* presupposes—a controversy thereafter arising out of [a] contract [to arbitrate]." (Internal quotation marks omitted.) See *Perez v. Discover Bank*, 74 F.4th 1003, 1011 (9th Cir. 2023) (it would be absurd to find that plaintiff and Discover Bank formed an agreement to arbitrate *discrimination* claims via a Citibank *loan* agreement signed several years earlier). In the absence of clear and unmistakable evidence that Sheridan agreed to delegate the arbitrability of the estate's wrongful death claims, the circuit court properly denied Uber's motion to compel arbitration of the arbitrability issue. The court—rather than an arbitrator—must decide arbitrability here.

¶ 71 Arbitration of the Underlying Dispute

¶ 72 Having found that the circuit court properly concluded that the parties did not agree to arbitrate the arbitrability of the estate's wrongful death claims, this court must decide whether these claims are subject to arbitration. We conclude that they are not.

¶ 73 Sheridan did not consent to arbitration provisions in any way referencing her status as a wrongful death beneficiary or the estate's personal representative regarding claims arising from Mark's use of Uber's services and subsequent death, and she is a nonsignatory to Mark's terms-of-use agreement involving arbitration based on his use of Uber's services and subsequent death. See *Carter II*, 2012 IL 113204, ¶ 31 (nonsignatories to an arbitration agreement are not bound to it). Likewise, Sheridan's individual agreement contains no language signaling her agreement to arbitrate claims arising from a third party's use of Uber's services and subsequent death. See *id.* ¶¶ 30-33 (holding that the plaintiff, who signed as decedent's agent, was bound to arbitrate only to the extent she acted in the decedent's stead and not when pursuing a wrongful death claim in a different legal capacity).

¶ 74 Arbitration is a matter of consent, and Uber has failed to establish that the estate or the statutory beneficiary consented to arbitrate this pending wrongful death dispute. See *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717-18, 721 (9th Cir. 2020) (parties did not have mutual intent to form an agreement to arbitrate any and all disputes that might ever arise between plaintiff and yet-unknown affiliates, no matter how unrelated to the service referenced in the agreement). We refuse to force the estate to arbitrate a matter it reasonably would have thought a judge, not an arbitrator, would decide. See *First Options*, 514 U.S. at 945. Therefore, we conclude that the circuit court also properly denied Uber's motion to compel arbitration of the merits of the estate's wrongful death dispute. Having determined that the appellate court erred on this basis, we do not reach the estate's procedural or substantive unconscionability arguments.

¶ 75 CONCLUSION

¶ 76 For the foregoing reasons, we reverse the appellate court's judgment. Because Sheridan's agreement applies only to disputes arising from her own use of Uber's services and because the estate's wrongful death claims arise solely from Mark's use and accrued only upon his death, no clear and unmistakable evidence exists to conclude that the parties agreed to delegate arbitrability of these claims to an arbitrator. Thus, the circuit court properly addressed arbitrability and properly found that, based on the language of Sheridan's terms-of-use agreement, Sheridan did not consent to submit the merits of the dispute to the arbitrator. Accordingly, the circuit court correctly denied Uber's motion to compel arbitration of the estate's wrongful death claims. On remand, proceedings on the estate's wrongful death counts may resume in the circuit court, and the survival counts remain dismissed per the estate's voluntary dismissal.

¶ 77 Appellate court judgment reversed.

¶ 78 Circuit court judgment affirmed.

¶ 79 Cause remanded.